**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Krystal Allyse SUROVCIK, Appellant.**

Superior Court of Pennsylvania.

Argued July 11, 2007.

Filed Aug. 29, 2007.

Reargument Denied Nov. 5, 2007.

Michael A. Ventrella, Tannersville, for appellant.

Jeremy Bolles, Asst. Dist. Atty, Stroudsburg, for the Com., appellee.

BEFORE: JOYCE,* PANELLA and POPOVICH, JJ.

OPINION BY POPOVICH, J.:

¶ 1 Appellant Krystal Allyse Surovcik appeals the judgment of sentence entered on December 4, 2006, in the Court of Common Pleas of Monroe County, following her conviction for endangering the welfare of children, graded as a misdemeanor of the first degree.[1] On appeal, Appellant claims the following: (1) that the trial court abused its discretion by denying Appellant's motion to dismiss charges pursuant to Pa.R.Crim.P. 600; (2) that the evidence was insufficient to convict Appellant

---

* Judge Joyce did not participate in the consideration or decision of this case.

1. 18 Pa.C.S.A. § 4304

of endangering the welfare of children; (3) that the verdict was against the weight of the evidence; and (4) that the sentencing court erred by refusing to consider certain statements by the jury foreman as a mitigating factor. Upon review, we reverse and remand with the directive that Appellant be discharged.

¶ 2 The relevant facts and procedural history of this case are as follows: On July 19, 2004, Appellant and her then-husband, Travis Surovcik, were charged with various offenses, including simple assault and endangering the welfare of children, stemming from the alleged physical abuse of their minor child (Child). In exchange for Appellant's cooperation with its investigation against Travis, which led to his subsequent pleas of guilty to charges of simple assault and endangering the welfare of children, the Commonwealth dropped the charges against Appellant on January 27, 2005.

¶ 3 The Commonwealth re-filed the charges against Appellant on May 4, 2005. A preliminary hearing was held before Magisterial District Judge Richard Claypool, who bound over the charges for trial. Thereafter, on August 24, 2005, Appellant filed an omnibus pre-trial motion, which included a request for a bill of particulars, a motion to dismiss pursuant to Pa. R.Crim.P. 600, and a petition for writ of *habeas corpus.* On November 18, 2005, the trial court granted Appellant's request for a bill of particulars, but it denied the remainder of Appellant's omnibus pre-trial motion. The trial court authored an opinion in support of its order. In turn, Appellant filed with the trial court a motion to certify the matter as a controlling issue of law to permit an interlocutory appeal to this Court. The trial court denied this motion on December 12, 2005. Appellant then filed a petition for review with this Court, which we denied on February 28,

2006. *See Commonwealth v. Surovcik,* 6 EDM 2006 (Pa.Super.2006) (unpublished order).

¶ 4 While Appellant's petition for review was pending in this Court, she filed a motion to dismiss duplicate charges and amend the information, due to the Commonwealth's failure to file a bill of particulars. The trial court denied this motion on December 20, 2005, but it ordered the Commonwealth to file a bill of particulars. The Commonwealth failed to file a bill of particulars, and, instead, on February 3, 2006, it moved to amend the bill of information to remove the duplicate charges, which the trial court granted on that same day.

¶ 5 The case proceeded to a jury trial on September 7–8, 2006. At the close of the Commonwealth's case, Appellant made an oral motion for acquittal, which the trial court denied. Despite its denial of the motion for acquittal, the trial court elected not to instruct the jury regarding a course of conduct involving the endangerment of the welfare of children, and, therefore, Appellant could be convicted only of the offense as a first-degree misdemeanor. *See* 18 Pa.C.S.A. § 4304(b). Following presentation of Appellant's case, the jury was instructed and retired for deliberation. The jury convicted Appellant of endangering the welfare of children but acquitted her of all other charges.

¶ 6 After conviction, Appellant filed a motion for extraordinary relief, wherein she asserted that there was insufficient evidence to convict her of endangering the welfare of children and that the verdict was against the weight of the evidence. This motion was based on a telephone message from the jury foreman to Appellant's trial counsel, wherein the jury foreman stated that the jury made a "grave error" and that he would do anything to rectify the error, including testify before

the trial court.[2] On November 27, 2006, following a hearing on the motion for extraordinary relief, the trial court denied the motion.

¶ 7 The trial court ordered the preparation of a pre-sentence investigation report (PSI report), which was completed by the probation department. The initial PSI report listed Appellant's conviction as being for third-degree felony endangerment of the welfare of children and recommended a sentence of 6–12 months of incarceration. Upon Appellant's objection, a second PSI report was prepared, which listed the proper grading of Appellant's conviction. The second PSI report also recommended a sentence of 6–12 months of incarceration. Appellant appeared for a sentencing hearing on December 4, 2006, whereat the trial court sentenced Appellant to 4 to 23 months of incarceration in the Monroe County Correctional Facility. In addition, Appellant was to pay the costs of prosecution. Appellant filed a timely motion for the reconsideration of sentence on December 11, 2006, which the trial court denied. Thereafter, Appellant filed a timely notice of appeal to this Court. The trial court, in turn, ordered Appellant to file a concise statement of the matters complained of on appeal. Appellant complied with the trial court's order and filed the statement in a timely fashion. After receipt of Appellant's concise statement, the trial court authored an opinion that addressed the issues presented in Appellant's concise statement.

¶ 8 We consider first whether the trial court abused its discretion in denying Appellant's pre-trial motion to dismiss pursuant to Pa.R.Crim.P. 600. Specifically, Appellant alleges that the Commonwealth's withdrawal and re-filing of the charges against Appellant constituted an effort to evade the time requirements of Pa.R.Crim.P. 600 and that the Commonwealth failed to act with "due diligence" by not bringing the charges against Appellant at the earliest possible time. Our review of this issue is governed by the following standard:

In evaluating [Pa.R.Crim.P.] 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. Furthermore:

The proper scope of review [. . .] is limited to the evidence of record of the [Pa.R.Crim.P.] 600 evidentiary hearing, and the findings of the trial court.[3] An appellate court must view the facts in the light most favorable to the prevailing party. Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind [Pa.R.Crim.P.] 600. [Pennsylvania Rule of Criminal Procedure] 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of

2. Ultimately, the jury foreman was not present to testify at the hearing on the motion for extraordinary relief.

3. We note that there was not an evidentiary hearing in this case. The Commonwealth did not dispute that trial in this case took place more than 365 days after Appellant was charged originally on July 19, 2004. Instead, the issue was whether the Commonwealth's withdrawal and re-filing of the charges constituted an effort to evade the time requirements of Pa.R.Crim.P. 600 and whether the Commonwealth acted with due diligence by its actions of having the charges dismissed and later re-filing them. Accordingly, the trial court did not conduct an evidentiary hearing but, instead, made its findings based on the facts developed at the preliminary hearing and the arguments presented in the parties' briefs. Therefore, we must base our review of the trial court's exercise of discretion regarding Pa.R.Crim.P. 600 on this record.

society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of [Pa. R.Crim.P.] 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, [Pa. R.Crim.P.] 600 must be construed in a manner consistent with society's right to punish and deter crime.

*Commonwealth v. Martz,* 2007 PA Super 165, ¶¶ 2–3, 926 A.2d 514 (citations omitted).

¶ 9 Pennsylvania Rule of Criminal Procedure 600 states, in pertinent part, the following:

Rule 600. Prompt Trial

(A) [ . . . ].

\* \* \*

(3) Trial in a court case in which a written complaint is filed against the defendant, when the defendant is at liberty on bail, shall commence no later than 365 days from the date on which the complaint is filed.

\* \* \*

(G) For defendants on bail after the expiration of 365 days, at any time before trial, the defendant or the defendant's attorney may apply to the court for an order dismissing the charges with prejudice on the ground that this rule has been violated[ . . . ]. If the court, upon hearing, shall determine that the Commonwealth exercised due diligence and that the circumstances occasioning the postponement were beyond the control of the Commonwealth, the motion to dismiss shall be denied and the case shall be listed for trial on a date certain. If, on any successive listing of the case, the Commonwealth is not prepared to proceed to trial on the date fixed, the court shall determine whether the Commonwealth exercised due diligence in attempting to be prepared to proceed to trial. If, at any time, it is determined that the Commonwealth did not exercise due diligence, the court shall dismiss the charges and discharge the defendant[ . . . ].

¶ 10 The rule has been construed by the Courts of this Commonwealth as preventing the Commonwealth from filing and withdrawing a set of charges and re-filing them later in order to circumvent the 365–day limitation period of the rule and, thereby, extend the time that a defendant could be brought to trial. *See Commonwealth v. Meadius,* 582 Pa. 174, 180, 870 A.2d 802, 805 (2005) (*citing Commonwealth v. Sires,* 284 Pa.Super. 50, 424 A.2d 1386, 1387 (1981), and *Commonwealth v. Mumich,* 239 Pa.Super. 209, 361 A.2d 359, 361 (1976)). Therefore, prior to *Meadius,* this Court employed a two-pronged analysis to determine the proper date to calculate the 365–day period, whereby this Court would calculate the 365–day period from the second filing of charges if the following facts were present: (1) the first complaint was properly dismissed by a competent judicial or magisterial authority; and (2) the Commonwealth's actions precipitating dismissal were undertaken without any intent to evade the rule's mandate. *See Meadius,* at 180, 870 A.2d at 805 (*citing Sires,* 424 A.2d at 1387, and *Mumich,* 361 A.2d at 361). If these facts

were not present, the 365–day period was to be calculated using the date of the first filing of charges as the start date. *Id.*, at 180, 870 A.2d at 805.

¶ 11 In addition to the "evasion" prohibition of Pa.R.Crim.P. 600 found and explained by the *Sires* line of cases, the *Meadius* Court also recognized that Pa. R.Crim.P. 600(G) precludes the withdrawal and re-filing of charges where the Commonwealth failed to exercise "due diligence" in bringing charges against the defendant at the earliest possible time. *See Meadius*, at 183–84, 870 A.2d at 807–08. Further, the lack of "due diligence" provides an *independent basis* for dismissal under Pa.R.Crim.P. 600(G), regardless of the lack of evasive intent on the part of the Commonwealth. *Id.*, at 182 n. 4, 870 A.2d at 807 n. 4 (emphasis added).

¶ 12 Our Supreme Court explained the basis for its holding in the following fashion:

Rule 600, as noted, does not speak explicitly to the manner in which serial filing cases should be handled. While this Court has determined that the Commonwealth may not obtain the benefit of the second date where the re-filing is intended to evade the rule's time limits, [ . . . ] it has never faced the distinct question of whether the same result should obtain where the serial filing is brought about because the prosecution does not exercise due diligence. We believe that it should. The rule's focus upon allowing the prosecution time extensions only where it has acted diligently and where the delays in question were caused by factors beyond its control supports an interpretation whereby it must forego the benefit of a second filing date when these conditions are not met. Indeed, a contrary result would undermine the rule's own facial requirements directed to prosecutorial diligence, as well

as its objectives, which include advancing society's interests in seeing those accused of crime prosecuted in a timely manner, [ . . . ] as well as ensuring the efficient management of criminal cases as a means of avoiding substantial backlogs[.]

*Meadius*, at 183–84, 870 A.2d at 808 (citations omitted).

¶ 13 Applied to the present case, we are constrained to conclude that *Meadius* prevents the Commonwealth from obtaining the time-extension benefit of its serial filing of the charges against Appellant.

¶ 14 We begin with the observation that we do not dispute the trial court's finding that the Commonwealth lacked intent to evade the time constraints of Pa.R.Crim.P. 600. Indeed, the transcript of the preliminary hearing makes clear that the Commonwealth re-filed the charges because it felt that Appellant had a more active hand in Child's abuse than it had thought originally. *See* N.T. Preliminary hearing, 6/16/2005, at 35–36. Likewise, it is evident that the original charges filed against Appellant were, at the Commonwealth's request, dismissed by Magisterial District Judge Richard Claypool. Therefore, these facts met the minimum requirements of the *Sires* rule, and, as a result, the trial court denied Appellant's motion to dismiss. *See, e.g., Sires*, 424 A.2d at 1387.

¶ 15 However, Appellant presented to the trial court the argument that the Commonwealth did not exercise due diligence with respect to this prosecution prior to its withdrawal and re-filing of the charges against Appellant in this case. *See Meadius*, at 182, 870 A.2d at 807. Aside from its consideration of whether the Commonwealth had "evasive intent," the trial court did not consider the Commonwealth's diligence with regard to this prosecution prior to the withdrawal of the original charges against Appellant. Accordingly, we must

look to the record to determine whether the Commonwealth acted with due diligence in bringing charges against Appellant at the earliest possible time. *Id.,* at 183–84, 870 A.2d at 807–08.

¶ 16 As noted above, the trial court relied upon the record established at the preliminary hearing to determine whether the Commonwealth intended to evade the time constraints of Pa.R.Crim.P. 600(G). Appellant asserts that each of the witnesses who testified at the hearing were available to the Commonwealth throughout the course of the prosecution of the cases against both Travis and Appellant, and, therefore, the Commonwealth failed to utilize all of the evidence at its disposal to bring Appellant's case to trial at a reasonable time. *See, e.g., Meadius,* at 182–83, 870 A.2d at 807 (exercise of "due diligence" requires Commonwealth to do everything reasonable within its power to guarantee that a trial begins on time) (citation omitted). A review of the record indicates that Appellant's assertion is correct.

¶ 17 Nancy Surovcik, Child's paternal grandmother, Dawn Walker, Child's Children and Youth Services caseworker, and Travis Surovcik, were the witnesses who testified at the preliminary hearing to establish a *prima facie* case against Appellant. These witnesses were all known to the Commonwealth because they were part of the investigation into Child's injuries. With the exception of Travis, who was himself prosecuted and benefited from his Fifth Amendment right against self-incrimination, these witnesses were available to testify against Appellant from July 19, 2004, the date when the first set of charges were alleged against Appellant, until the ultimate disposition of the case. Likewise, the medical record evidence introduced against Appellant at the preliminary hearing was available for the Commonwealth's use from July 19, 2004, until

the ultimate disposition of the case. Therefore, the only "new" evidence that came into the Commonwealth's possession in the nearly four-month span between January 27, 2005 (when the charges were dropped against Appellant) and May 4, 2005, was Travis' testimony at Appellant's preliminary hearing. Accordingly, we will examine his testimony in depth to determine whether the information contained therein would constitute reasonable grounds for the Commonwealth to re-file the charges against Appellant on May 4, 2005.

¶ 18 Essentially, Travis' testimony does nothing more than recount the family's activities prior to taking Child to the home of Nancy Surovcik, who discovered Child's injuries. Travis' testimony added that Appellant placed Child in his car seat, from which Nancy Surovcik removed Child to discover that he was injured. Given Child's age at the time of the injuries, the medical evidence, and the resulting conclusion that the injuries to Child were caused by a supervising adult authority, Travis' testimony, without more, would do little to either foster or inhibit a prosecution for simple assault and endangering the welfare of children. Consequently, it is clear that Travis' testimony itself did not provide evidence that, "standing alone and unexplained, would maintain the proposition and warrant the conclusion" that Appellant committed the aforementioned crimes, or, as Appellant puts it, a "smoking gun" demonstrating Appellant's complicity in Child's injuries. *See* Black's Law Dictionary 1209, 579 (7th ed. 1999) (definition of *prima facie* evidence). Further, when viewed jointly with the other testimony and evidence presented at the preliminary hearing, Travis' testimony was merely cumulative to the other evidence presented, which, as discussed above, was available for the Commonwealth's use from July 19, 2004, until the ultimate disposition of the

case. Accordingly, the appropriation of this "new" evidence by the Commonwealth did not place its prosecution on a better footing than it was previously and, therefore, does not constitute the exercise of "due diligence." *See Meadius,* at 182–83, 870 A.2d at 807 (exercise of "due diligence" requires Commonwealth to do everything reasonable within its power to guarantee that a trial begins on time) (citation omitted).

¶ 19 In sum, as it is clear that the evidence presented by the Commonwealth at the preliminary hearing was in its possession and control from July 19, 2004, until present, and that the new evidence, *i.e.,* Travis' testimony, that was used to justify its serial filing was merely cumulative to the evidence already in its possession, we agree with Appellant's argument that the Commonwealth did not exercise "due diligence" in bringing this case to trial on time. *See Meadius,* at 182–83, 870 A.2d at 807. Accordingly, we conclude that the Commonwealth should not be given the benefit of the "due diligence" grace *proviso* in Pa.R.Crim.P. 600(G) and that it must forego the benefit of the second filing date for purposes of our analysis. *Id.,* at 183–84, 870 A.2d at 808 (citations omitted). Therefore, we conclude that Appellant's rights under Pa.R.Crim.P. 600(G) were violated because she was brought to trial more than 365 days after the filing of the original complaint, and the Commonwealth did not exercise due diligence. Consequently, we are constrained to conclude that the trial court abused its discretion when it denied Appellant's motion to dismiss and that we must reverse its order. *Id.,* at 183–84, 870 A.2d at 808. We remand this case to the trial court with the directive that it dismiss the charges against Appellant and discharge her.[4]

¶ 20 Order reversed. Case remanded with instructions. Jurisdiction relinquished.

---

4. Given our disposition, we need not address Appellant's remaining issues.