**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Barry Lee RHODES, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 20, 2012.

Filed Oct. 1, 2012.

Christopher J. Basner, Haddonfield, NJ, for appellant.

Craig W. Stedman, Assistant District Attorney, and Jennifer H. Blackledge, Assistant District Attorney, Lancaster, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., OTT, J., and COLVILLE, J.*

OPINION BY STEVENS, P.J.

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Lancaster County following Appellant's conviction by a jury on one count of rape, two counts of attempted rape, one count of involuntary deviate sexual intercourse, two counts of aggravated indecent assault, ten counts of indecent assault, and two counts of corruption of minors.[1] Appellant contends (1) the trial court erred in failing to dismiss all charges pursuant to Pa.R.Crim.P. 600, as well as his constitutional right to a speedy trial; (2) the trial court erred in failing to dismiss all charges based on the prosecution's violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); (3) the trial court erred in failing to provide Appellant with funds so that he could obtain a psychological expert to assist him in his Megan's Law[2] hearing; and (4) the trial court erred in failing to award Appellant a new trial since the prosecutor threatened a defense witness with incarceration and insinuated Appellant was not telling the truth. We affirm.

The relevant facts and procedural history are as follows: On April 20, 2001, Appellant was charged with various sex crimes with regard to K.L.E. (d.o.b. 1/23/91) and K.E. (d.o.b. 12/9/88), who is mentally disabled, and on December 28, 2001, the matter proceeded to a preliminary hearing. N.T. 7/14/11 at 216–218. During the preliminary hearing, then ten-year-old K.L.E. was very frightened and visibly nervous. N.T. 7/14/11 at 217–218.

The Commonwealth called K.L.E. to the stand, and after K.L.E. answered basic biographical questions in order to establish her competency to testify, the prosecutor began asking K.L.E. questions regarding the abuse allegations. N.T. 7/14/11 at 219. K.L.E. "froze. She clammed up. She started crying and she wouldn't speak. She wouldn't proceed beyond that." N.T. 7/14/11 at 219. After it became apparent to the prosecutor that K.L.E. would be unable to participate in the courtroom proceedings, she "stopped the preliminary hearing and withdrew the charges [against Appellant]." N.T. 7/14/11 at 220.

Subsequently, K.L.E., who was then attending college, contacted the police, who interviewed K.L.E. N.T. 7/14/11 at 231. K.L.E. described in detail to the police the sex abuse perpetrated upon her and her sister by Appellant. N.T. 7/14/11 at 231. The police then questioned Appellant on May 5, 2010, and, after Appellant waived his *Miranda*[3] rights, he admitted that he had a problem with controlling himself with children. N.T. 7/14/11 at 237–241. However, Appellant told the police he would not talk about "what happened in Lancaster County" with K.L.E. and K.E., and he stated, "Nothing I'm going to say to you is going to help me." N.T. 7/14/11 at 242.

Following the interview with Appellant, on June 18, 2010, the police filed a new criminal complaint against Appellant, charging him with various sex crimes with regard to K.L.E. and K.E. On March 7, 2011, Appellant filed several counseled pre-trial motions, including one seeking to dismiss all charges pursuant to Pa.

---

* Retired Senior Judge assigned to the Superior Court.

1. 18 Pa.C.S.A. §§ 3121(a)(6), 901(a), 3123(a)(5), 3125(7), 3126(a)(7), and 6301, respectively.

2. 42 Pa.C.S.A. §§ 9791–9799.9.

3. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

R.Crim.P. 600 and his constitutional right to a speedy trial. Therein, Appellant suggested that the delay from December 28, 2001, when the initial charges were withdrawn, to June 18, 2010, when a new criminal complaint was filed, should not be tolled in computing time under Rule 600. Appellant further suggested that the Commonwealth's reason for the delay, i.e., that K.L.E. could not adequately remember the events, was insufficient to overcome the nearly ten year delay in prosecuting Appellant. Following the Commonwealth's response to Appellant's pre-trial motions to dismiss, by order entered on April 21, 2011, the trial court denied Appellant's pre-trial motion to dismiss.

On July 11, 2011, Appellant filed a counseled motion *in limine* seeking to compel, *inter alia*, disclosure of State Police Trooper Linda Gerow's personnel file and "contact information of witnesses that provided exculpatory statements regarding the defendant." The trial court denied the motion, and on July 14, 2011, the matter proceeded to a jury trial, following which Appellant was convicted of the aforementioned charges. The trial court deferred sentencing and ordered Appellant to undergo an assessment by the Sexual Offenders Assessment Board. On September 27, 2011, Appellant filed a counseled motion seeking funds for Appellant to obtain a psychological expert to assist him at the Megan's Law hearing. The trial court denied Appellant's request, and following a hearing on September 29, 2011, the trial court found Appellant to be a sexually violent predator for Megan's Law purposes and sentenced him to an aggregate of twenty-one years to forty-two years in prison. Appellant filed a timely post-sentence motion, which the trial court denied, and this timely counseled appeal followed. The trial court directed Appellant to file a Pa.R.A.P. 1925(b) statement, Appellant

timely complied, and the trial court filed a responsive Pa.R.A.P. 1925(a) opinion.

Appellant's first contention is the trial court erred in failing to dismiss all charges pursuant to Pa.R.Crim.P. 600. Specifically, Appellant alleges the commencement date for Rule 600 purposes is from when the initial criminal complaint was filed in 2001. That is, he contends the delay from December 28, 2001, when the initial charges were withdrawn, to June 18, 2010, when a new criminal complaint was filed, should not be tolled in computing time under Rule 600.

We conduct our review of the trial court's order denying [Appellant's] motion to dismiss as follows:

> The proper scope of review [ … ] is limited to the evidence of record of the [Pa.R.Crim.P.] 600 evidentiary hearing, and the findings of the trial court. An appellate court must view the facts in the light most favorable to the prevailing party. Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind [Pa.R.Crim.P.] 600.

> [Pennsylvania Rule of Criminal Procedure] 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of [Pa.R.Crim.P.] 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

> So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental

speedy trial rights of an accused, [Pa. R.Crim.P] 600 must be construed in a manner consistent with society's right to punish and deter crime.

*Commonwealth v. Surovcik*, 933 A.2d 651, 653–54 (Pa.Super.2007).

Rule 600 provides that, when a complaint is filed against a defendant who is incarcerated, trial must begin 180 days from the date on which the complaint was filed; however, where a defendant is at liberty on bail, trial must commence within 365 days of the date of the criminal complaint. Pa.R.Crim.P. 600(A)(2), (3). The Rule further provides that certain periods are excluded from Rule 600 calculation. Pa.R.Crim.P. 600(C).

Preliminarily, we note that the plain language of Rule 600 does not implicate a due diligence inquiry until, as calculated from the filing of an existing complaint, the applicable period has elapsed and a defendant files a motion to dismiss the charges. Indeed, the language of Rule 600 ordinarily applies to defendants on bail. However, once a complaint has been dismissed, no charges are pending, the person is no longer a defendant, nor on bail, and Rule 600 generally would not apply.

Nevertheless, our Supreme Court has applied Rule 600 to situations where the prosecution has withdrawn an original complaint and subsequently re-filed that complaint.

*Commonwealth v. Peterson*, 19 A.3d 1131, 1135–36 (Pa.Super.2011) (en banc) (footnote omitted).

■ In so doing, the courts have noted that, "[R]ule 600 has been construed by the Courts of this Commonwealth as preventing the Commonwealth from filing and withdrawing a set of charges and re-filing them later in order to circumvent the 365-day limitation period of the Rule, thereby extending the time that a defendant could be brought to trial." *Commonwealth v. Johnson*, 11 A.3d 509, 511 (Pa.Super.2010) (citation omitted). "[However,] [o]ur Supreme Court [has] reasoned that the Commonwealth will be allowed the benefit of filing [a] second complaint where the withdrawal and re-filing of the charges is necessitated by factors beyond its control." *Commonwealth v. Leak*, 22 A.3d 1036, 1042 (Pa.Super.2011) (quotation and quotation marks omitted). Stated differently, in withdrawing and subsequently re-filing charges, regardless of any lack of intent to delay, the Commonwealth must demonstrate that it proceeded diligently in prosecuting the original case in order to receive the benefit of the run date commencing from the filing of the second complaint. *See Peterson, supra.* Thus, the law requires that the courts analyze whether the Commonwealth was duly diligent in prosecuting the first complaint. *See id.* "If the prosecution was diligent, the applicable run date ... is triggered when the Commonwealth files the second complaint." *Peterson*, 19 A.3d at 1136. "Due diligence is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort." *Peterson*, 19 A.3d at 1137 (quotation and quotation marks omitted).

■ In the case *sub judice*, Appellant argues the delay from December 28, 2001, when the initial charges were withdrawn, to June 18, 2010, when a new criminal complaint was filed, should not be tolled in computing time under Rule 600. He suggests that the Commonwealth's reason for withdrawing the initial charges was unreasonable, particularly in light of the fact it is incredible that the victim can now remember events, almost ten years later, which she could not remember at the initial preliminary hearing on December 28, 2001. The Commonwealth, on the other

hand, asserts that it was duly diligent in prosecuting the original complaint and did not intend to evade the timeliness provisions of Rule 600 by re-filing the charges.

Here, focusing solely on the reason the Commonwealth withdrew the initial complaint, as Appellant suggests that we do, the record reveals that, as of December 28, 2001, the two victims were ten and twelve years old. Since twelve-year-old K.E. was mentally disabled, the Commonwealth was forced to rely on the testimony of then ten-year-old K.L.E. to establish a *prima facie* case at the preliminary hearing. Unfortunately, K.L.E., when faced with her abuser, became extremely emotional, resulting in her inability to testify. In this regard, the prosecutor noted that the courtroom for the December 28, 2001 preliminary hearing was relatively small, requiring K.L.E. to sit just five feet away from Appellant as she attempted to testify. N.T. 7/14/11 at 217. As the prosecutor began asking K.L.E. questions about the sexual abuse, K.L.E. began crying so hard that she could not speak. N.T. 7/14/11 at 219. At this point, the Commonwealth, realizing that K.L.E. could not proceed, withdrew the charges filed against Appellant. N.T. 7/14/11 at 220.

Contrary to Appellant's contention, the record does not support Appellant's assertion that ten-year-old K.L.E. was unable to testify at the December 28, 2001 preliminary hearing due to a faulty memory. Rather, the record supports the conclusion that K.L.E. was unable to testify due to the traumatic nature of the abuse, resulting in an emotional reaction causing her inability to testify. Thus, we conclude the Commonwealth's withdrawal of the initial charges against Appellant was necessitated by factors beyond its control, and therefore, the trial court did not abuse its discretion in denying Appellant's motion to dismiss under Pa.R.Crim.P. 600. *Peterson, supra; Surovcik, supra.*

■ To the extent Appellant suggests the nearly ten year delay from when the initial charges were withdrawn until the new complaint was filed violates his constitutional right to a speedy trial, we apply the test set forth by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). In *Barker*, the U.S. Supreme Court indicated that assessment of a claimed violation of the constitutional right to a speedy trial must be done on a case-by-case basis and was incapable of precise delineation. The Court set forth the following factors, which are to be considered: "[the] length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530, 92 S.Ct. 2182.

In the case *sub judice*, while Appellant has correctly noted the length of the delay, he has incorrectly set forth the reason for the delay. As indicated *supra*, Appellant asserts the delay is attributable to K.L.E.'s faulty memory, which Appellant avers could not have improved after a ten-year delay. *See* Appellant's Brief at 4–5. However, as indicated *supra*, the record reveals the delay is attributable to the traumatic nature of the events occurring in this case, combined with K.L.E.'s young age and inability to emotionally testify.

Moreover, while Appellant asserted his speedy trial right, he has failed to set forth how he was prejudiced by the delay. *See Barker, supra.* Appellant avers he suffered prejudice since witnesses interviewed by law enforcement in 2001 gave statements indicating the alleged instances of sexual misconduct did not happen; however, the Commonwealth would not provide Appellant with the witnesses' current contact information so Appellant could utilize them in his defense. Inasmuch as

there is no evidence Appellant, with reasonable effort, could not have discovered the witnesses' contact information on his own accord, we fail to see how he was prejudiced under *Barker*. Thus, we find no merit to this claim.

Appellant's next contention is that the trial court erred in denying Appellant's motion *in limine* in which he sought contact information for witnesses who provided exculpatory evidence during the original 2001 police investigation. Appellant contends the Commonwealth's failure to provide the contact information or whereabouts of the witnesses constituted a *Brady* violation.

[I]n order to establish a *Brady* violation, a defendant must show that (1) evidence was suppressed by the state, either willfully or inadvertently; (2) the evidence was favorable to the defendant, either because it was exculpatory or because it could have been used for impeachment; and (3) the evidence was material, in that its omission resulted in prejudice to the defendant.

*Commonwealth v. Willis*, — Pa. —, 46 A.3d 648, 656 (2012) (citations omitted).

The burden rests with Appellant to prove, by reference to the record, that evidence was withheld or suppressed by the prosecution. There is no *Brady* violation when the appellant knew or, with reasonable diligence, could have uncovered the evidence in question, or when the evidence was available to the defense from non-governmental sources.

*Commonwealth v. Chamberlain*, 612 Pa. 107, 30 A.3d 381, 409 (2011) (quotations, quotation marks, and citations omitted).

Here, Appellant's argument does not suggest that he does not know the identity of the witnesses, who allegedly made statements to the police in 2001 indicating that Appellant did not sexually abuse the victims. Rather, Appellant's argument suggests that the police should have provided him with the contact information or whereabouts of the witnesses. However, Appellant has failed to explain why he could not, with reasonable diligence, uncover this information himself. *See id.* Thus, Appellant is clearly not entitled to relief on this claim.

Appellant's next contention is the trial court erred in failing to provide Appellant with funds so that he could obtain a psychological expert to assist him in his Megan's Law hearing. In support of his argument, Appellant refers to this Court's holding in *Commonwealth v. Curnutte*, 871 A.2d 839 (Pa.Super.2005). Rather recently, this Court summarized the holdings in *Curnutte* as follows:

In *Curnutte*, this Court ruled that 42 Pa.C.S.A. § 9795.4(e)(2) provides all defendants with the right to call expert witnesses and to an expert assessment other than that conducted by the Sexual Offenders Assessment Board. *Id.* at 842. In so ruling, we concluded that it would be fundamentally unfair to afford a defendant those rights but then preclude him from exercising them simply because he is indigent. Likewise, it would be unfair to allow a wealthy defendant those rights but to deny them to one who is indigent. In *Curnutte*, there was no dispute that the defendant was indigent, and we further noted that '[i]t is true that the Commonwealth is not obligated to pay for the services of an expert simply because a defendant requests one.' *Id.* at 842.

*Commonwealth v. Cannon*, 954 A.2d 1222, 1225 (Pa.Super.2008).

In this case, contrary to *Curnutte*, the trial court found, as a matter of fact, that Appellant was not indigent and, thus, denied Appellant's motion on this basis. While Appellant testified on direct-exami-

nation he did not have the money to pay for an expert, N.T. 9/29/11 at 6–7, the trial court did not find credible Appellant's self-serving, conclusory statement. Rather, the trial court considered Appellant's testimony on cross-examination that he has roughly $1,000.00 in his checking account, he owns a 1994 Ford Taurus station wagon, and he continues to receive $1,144.00 per month in social security disability payments, despite the fact he is incarcerated. N.T. 9/29/11 at 6–12. The trial court noted that it was Appellant's choice not to utilize his assets to obtain an expert, and to instead utilize his assets for other purposes. N.T. 9/29/11 at 6–13. We find no abuse of discretion in this regard. *See Cannon, supra* (indicating we utilize an abuse of discretion standard as it relates to the appointment of defense experts in criminal matters).

 Appellant's final contention is the trial court erred in failing to award him a new trial since the prosecutor threatened a defense witness with incarceration and insinuated Appellant was not telling the truth. We find this issue to be waived.

Appellant's entire appellate argument in this regard is as follows:

> Defendant Barry Lee Rhodes respectfully requests This Honorable Court to vacate the judgment of sentence. For, the prosecutor threatened a defense witness with incarceration and insinuated that the defendant was not telling the truth. *Commonwealth v. Laird,* 2010 Pa. Lexis 158, held that prosecutorial misconduct involved the prosecutor insinuating that the defendant was not telling the truth.

Appellant's Brief at 6.

As is evident, Appellant has failed to adequately develop this argument. *See* Pa.R.A.P. 2119. For instance, Appellant has failed to identify which defense witness the prosecutor allegedly threatened or where in the record the prosecutor allegedly insinuated Appellant was not telling the truth. Additionally, aside from baldly asserting such occurred, Appellant has provided us with no other relevant analysis, particularly as to how he was prejudiced by such alleged conduct. Therefore, we find this issue to be waived. Pa.R.A.P. 2119.

For all of the foregoing reasons, we affirm.

Affirmed.