J-S67012-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                           :                PENNSYLVANIA
                                             :

                   v.                                 :
                                             :

NATHAN WINSTON BUNDY            :
                                             :

               Appellant              :     No. 964 EDA 2018

Appeal from the PCRA Order April 2, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003368-2008

BEFORE: OTT, J., NICHOLS, J., and STRASSBURGER[*], J.

MEMORANDUM BY OTT, J.:                        **FILED FEBRUARY 07, 2019**

Nathan Winston Bundy appeals from the order entered April 2, 2018, in the Philadelphia County Court of Common Pleas, dismissing his first petition for collateral relief filed pursuant to the Post Conviction Relief Act ("PCRA").[1] Bundy seeks relief from the judgment of sentence of an aggregate term of 19 to 38 years' imprisonment, imposed following his jury conviction of third-degree murder, possession of a firearm without a license, and possession of an instrument of crime ("PIC").[2] On appeal, Bundy contends the PCRA court erred in dismissing his petition without first conducting an evidentiary hearing on his claims that trial counsel was ineffective for: (1) failing to object when

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] *See* 42 Pa.C.S. §§ 9541-9546.

[2] *See* 18 Pa.C.S. §§ 2502(c), 6106(a), and 907(a), respectively.

he was arraigned on a charge of persons not to possess firearms (18 Pa.C.S. § 6105) before the jury; (2) failing to file a motion to suppress two statements he provided to police; and (3) failing to object to prosecutorial misconduct. For the reasons below, we affirm.

The facts underlying Bundy's arrest and conviction were summarized by a prior panel of this Court as follows:

> On December 13, 2007[,] at approximately 5:00 p.m., [Bundy] and Jerome Foreman ("Foreman") engaged in a gun battle on a public street in a residential neighborhood in Philadelphia. Foreman called [Bundy] on the telephone and challenged him to come outside to settle an argument over a watch. As [Bundy] walked outside, Foreman saw him and began shooting. Foreman was standing in front of a convenience store when [Bundy] returned fire, firing thirteen (13) shots from a Ruger 9mm. One of these stray bullets entered the store behind Foreman and killed the store clerk, Craig Young.

*Commonwealth v. Bundy*, 24 A.3d 452 [284 EDA 2010] (Pa. Super. 2011) (unpublished memorandum at 1) (citation omitted). Bundy was apprehended fleeing from the scene, and initially told officers that someone had tried to rob him. *See* N.T., 5/7/2009, at 62-63. After Bundy was unable to identify persons stopped at two locations, he admitted to the officers that he had been robbed two weeks earlier, and believed he "was being set up" at the time of the shooting. *Id.* at 68. He claimed he fled after someone started shooting. *See id.* at 68-69. Bundy was transported to the police station as a witness, and within 30 minutes of his arrival, gave a similar statement to another officer. *See id.* at 150-154, 157, 164. Later, Bundy was provided with

- 2 -

*Miranda*[3] warnings, and gave a second statement to police, in which he conceded that he returned fire after others shot at him. *See id.* at 184-204.

Bundy was charged with murder, PIC, and three firearm offenses.[4] Following a jury trial, he was found guilty of the aforementioned crimes. On August 12, 2009, Bundy was sentenced to a term of 19 to 38 years' imprisonment for third-degree murder, a concurrent term of three and one-half to seven years for the firearms conviction, and a concurrent term of two and one-half to five years for the PIC conviction. Bundy filed a direct appeal to this Court, which affirmed the judgment of sentence in an unpublished decision. *See Bundy*, *supra*. On September 19, 2011, the Pennsylvania Supreme Court denied his petition for review. *See Commonwealth v. Bundy*, 29 A.3d 794 (Pa. 2011).

On December 11, 2012, Bundy filed a timely, *pro se* PCRA petition.[5] Counsel was appointed, and filed an amended petition on October 23, 2014.

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[4] In addition to carrying a firearm without a license, Bundy was also charged with persons not to possess firearms and carrying a firearm on a public street in Philadelphia. *See* 18 Pa.C.S. §§ 6105(a)(1) and 6108. The Commonwealth, however, chose not to proceed on those charges at trial.

[5] A PCRA petition must be filed within one year of the date the petitioner's judgment of sentence is final. *See* 42 Pa.C.S. § 9545(b)(1). In this instance, Bundy's judgment of sentence was final on December 19, 2011, 90 days after the Pennsylvania Supreme Court denied review, and the period for filing a writ of *certiorari* with the United States Supreme Court expired. *See* 42 Pa.C.S.A. § 9545(b)(3); U.S.Sup.Ct.R. 13.

For reasons not revealed in the record, the case sat dormant until November of 2016, when another new attorney was appointed. That attorney filed another amended petition, the one presently before us, on January 31, 2017. The Commonwealth filed a motion to dismiss the petition on January 12, 2018. Thereafter, on February 12, 2018, the PCRA court provided Bundy with notice of its intent to dismiss the petition without first conducting an evidentiary hearing pursuant to Pa.R.Crim.P. 907. Bundy did not file a response to the court's Rule 907 notice, and, therefore, the PCRA court dismissed Bundy's petition on April 2, 2018. This timely appeal follows.[6]

As noted above, all three claims Bundy raises on appeal challenge the ineffective assistance of trial counsel. Our standard of review, when considering the denial of PCRA relief, is well settled. "In reviewing the denial of PCRA relief, we examine whether the PCRA court's determination is supported by the record and free of legal error." *Commonwealth v. Mitchell*, 141 A.3d 1277, 1283–1284 (Pa. 2016) (internal punctuation and citation omitted). Further, "a PCRA court may decline to hold a hearing on the petition if petitioner's claim is patently frivolous or lacks support from either the record or other evidence." *Commonwealth v. duPont*, 860 A.2d

---

[6] On April 3, 2018, the PCRA court ordered Bundy to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Bundy complied with the court's directive, and filed a concise statement on April 8, 2018.

525, 530 (Pa. Super. 2004) (citation omitted), *appeal denied*, 889 A.2d 87 (Pa. 2005), *cert. denied*, 547 U.S. 1129 (2006).

In order to obtain relief based upon an allegation of the ineffective assistance of counsel, a PCRA petitioner must demonstrate: "(1) the claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) counsel's ineffectiveness prejudiced him." ***Commonwealth v. Michaud***, 70 A.3d 862, 867 (Pa. Super. 2013). Moreover, we presume counsel provided effective assistance, and "place upon the appellant the burden of proving otherwise." ***Id.***

First, Bundy argues the PCRA court erred in dismissing his petition without a hearing on his claim that counsel was ineffective for "allowing [him] to be arraigned" on the charge of persons not to possess firearms (18 Pa.C.S. § 6105) before the jury. Bundy's Brief at 8. He insists: "This is America and everyone knows that the only people that are prohibited from firearm possession are convicted felons." ***Id.*** Bundy maintains counsel had no reasonable basis for the inaction, and he suffered prejudice because "his prior felony was effectively revealed." ***Id.*** at 10. Bundy contends the "suggestion as to prior criminality" is the reason Section 6105 charges are severed from a jury trial. ***Id.***

Here, the PCRA court determined Bundy failed to demonstrate "his arraignment on VUFA [Violation of the Uniform Firearms Act] § 6105 before the jury prejudiced the outcome of his trial." PCRA Court Opinion, 6/7/2018, at 5. The court explained:

- 5 -

At the onset of [Bundy's] trial, [Bundy] was arraigned before the jury on five (5) charges. As is customary, the court officer asked [Bundy] how he pled to each charge. VUFA § 6105 was the second (2nd) charge out of five (5) to which [Bundy] was asked to plead. As noted by the Commonwealth, the court officer merely asked [Bundy], "to the charge of possession of a firearm prohibited, how do you plead?" [Bundy] responded "not guilty." The court officer then proceeded to ask about the other three (3) charges. VUFA § 6105 was not highlighted and did not stand out from the other charges in any way. [Bundy's] criminal past was never mentioned. No evidence of [Bundy's] criminal past was introduced. While [Bundy] is correct that "no reference may be made at trial to a defendant's prior criminal acts", this Court did not find that the limited verbal arraignment on VUFA § 6105, in any way constituted a reference to [Bundy's] prior criminal history. It is illogical to assume that the mention of "possession of a firearm prohibited" signaled to the jury that [Bundy] had a prior felony history. There are a multitude of gun laws that regulate firearm possession; convicted felons are not the only class of citizens who are prohibited from possessing a firearm. The court will not assume, and [Bundy] has not proven, that arraigning [Bundy] on VUFA § 6105 before the jury, at the onset of trial, where his criminal past was not explicitly mentioned, prejudiced [Bundy].

*Id.* (record citations omitted).

We agree with the PCRA court's analysis. It is important to reiterate Bundy was briefly arraigned on five charges just prior to the start of trial. *See* N.T., 5/6/2009, at 271. The only mention of the Section 6105 offense was the following:

A COURT OFFICER: To the charge—on the same bill to the charge of possession of a firearm prohibited, how do you plead?

[BUNDY]: Not guilty.

*Id.* Bundy was then arraigned on two additional gun charges, firearms not to be carried without a license and carrying firearms in public in Philadelphia. *See id.* at 271-272. As the PCRA court explained, there was no mention of

- 6 -

Bundy's criminal record, nor any indication that he was prohibited from possessing a firearm based on a prior felony conviction.

Moreover, we find Bundy's reference to cases in which the trial court denied a motion to sever a Section 6105 charge from a jury trial clearly distinguishable. **See** Bundy's Brief at 9-10. Indeed, in those cases, this Court found the defendant was prejudiced because in order to prove the offense to the jury, the Commonwealth was required "to show a previous conviction for a violent crime." **Commonwealth v. Carroll**, 418 A.2d 702, 704 (Pa. Super. 1980). Therefore, in such a case, "the jury [was] exposed to the fact that this particular defendant had previously committed a violent crime." **Id. See also Commonwealth v. Galassi**, 442 A.2d 328 (Pa Super. 1982). Here, there was absolutely no reference to Bundy's prior convictions.[7] Accordingly, this claim fails.

Next, Bundy contends the PCRA court erred in dismissing his petition without a hearing on his claim that counsel was ineffective for failing to file a pretrial motion to suppress two statements he provided to police. **See** Bundy's Brief at 11. Bundy argues he gave the first statement without being provided his **Miranda** rights, and "while in custody and [] not free to leave." **Id.** at 12. Although he was **Mirandized** before his second statement, Bundy

---

[7] We note, too, at the time those severance cases were decided, Section 6105 was titled, "**Former convict** not to own a firearm." **See** 18 Pa.C.S. § 6105, amended 1995, June 13, P.L. 1024, No. 17 (Spec. Sess. No. 1), § 2, effective in 120 days (emphasis supplied).

insists it was "tainted by the first non-***Mirandized*** statement." ***Id.*** Moreover, he emphasizes he was in custody "for thirty hours" before giving the second statement and "bullied into making a statement because police stated that [he] was lying with no cutoff unless a confession occurred." ***Id.*** at 13. Bundy maintains he was prejudiced by counsel's failure to seek suppression of his statements because there was "very little evidence" against him, and the Commonwealth used his "two contradictory statements to imply guilt." ***Id.*** at 13-14.

It is axiomatic that ***Miranda*** warnings are required only when a defendant is subject to a custodial interrogation. ***See Commonwealth v. Heggins***, 809 A.2d 908, 914 (Pa. Super. 2002) ("In order to trigger the safeguards of ***Miranda***, there must be both custody and interrogation"), *appeal denied*, 827 A.2d 430 (Pa. 2003). Our Supreme Court has explained:

> "The standard for determining whether police have initiated a custodial interrogation or an arrest is an objective one, with due consideration given to the reasonable impression conveyed to the person interrogated rather than the strictly subjective view of the troopers or the person being seized." … A person is in custody when he is physically denied his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation.

***Commonwealth v. Yandamuri***, 159 A.3d 503, 517-518 (Pa. 2017) (internal citations omitted). When determining whether a person is in custody for ***Miranda*** purposes,

> [t]he court must consider the totality of circumstances, including factors such as "the basis for the detention; the duration; the location; whether the suspect was transferred against his will, how

- 8 -

far, and why; whether restraints were used; the show, threat or use of force; and the methods of investigation used to confirm or dispel suspicions."

**Commonwealth v. Cruz**, 71 A.3d 998, 1004 (Pa. Super. 2013) (citation omitted), *appeal denied*, 81 A.3d 75 (Pa. 2013).

In the present case, the PCRA court concluded there was no arguable merit to Bundy's claim because (1) Bundy was not in custody when he gave his first statement, and (2) he was provided with **Miranda** warnings before his second statement. The court opined:

> Here, [Bundy] was initially treated as a witness therefore **Miranda** warnings were unnecessary. [Bundy] was transported to the Homicide Unit by Housing Authority Officer's (sic) as a witness to the shooting of Craig Young. At that time, he was not the focus of the investigation, but a witness. He was not handcuffed or restrained. [Bundy] was interviewed by Detective Buckley within thirty (30) minutes of arriving at the Homicide Unit. Detective Buckley asked [Bundy] for basic biographical information and whether he could read, write and understand English, to which [Bundy] replied "yes." [Bundy] was also asked whether he was under the influence of alcohol or drugs and he replied "no". Detective Buckley then interviewed [Bundy] specifically about the shooting of Craig Young, asking how [Bundy] knew the victim and what [Bundy] knew about the shooting. [Bundy] told the detective that he heard someone call his name, then he heard shots and took off running until he was approached by police. Detective Buckley then requested [Bundy] read and sign the typed interview and [he] complied. After this initial statement was given to Detective Buckley, [Bundy] was left to sit on a bench in the waiting area, unrestrained, while waiting for transportation by the officer who brought him in, as was customary for witnesses brought in by police officers. [Bundy] was not detained or in custody for **Miranda** purposes. The Pennsylvania Supreme Court has found that when individuals are interviewed as a witness, like here, even if they are subsequently arrested, **Miranda** warnings are not required.[5] Thus, [Bundy's] claim that trial counsel as ineffective for failing to file a Motion to Suppress [Bundy's] initial statement to homicide detectives is without arguable merit.

<hr>

[5] In **Commonwealth v. Homer**, 442 A.2d 682 (Pa. 1982), the Pennsylvania Supreme Court found **Miranda** warnings were unnecessary where a defendant was brought to the homicide division as a witness, in a locked police van and treated as a witness until police reviewed statements of other witnesses and made a decision to arrest the defendant.

<hr>

    Accordingly, [Bundy's] assertion that his second, **Mirandized** statement, should be suppressed because it was tainted by the first, non-**Mirandized** statement is meritless because [Bundy's] first statement did not require **Miranda** warnings.

PCRA Court Opinion, 6/7/2018, at 6-7 (record citations omitted).

Our review of the record supports the trial court's findings. When Bundy was initially stopped by the housing officers, he told them he had been a victim of a robbery. In response, the officers relayed a description he provided of the alleged suspect over the police radio, and transported Bundy to two separate locations to see if he could identify suspects that were stopped based on his description. **See** N.T., 5/7/2009, at 62-65. Later, after the officers took Bundy back to the scene of the shooting, Bundy acknowledged he had been robbed two weeks earlier, and he believed he was the target of the shooters. **See id.** at 68-69. Bundy was then transported to the police station, where he was interviewed by Detective Stephen Buckley. Detective Buckley explained that, at that time, Bundy was simply a witness to the shooting. **See id.** at 149-150. **See also id.** at 156 ("He was present at the scene of the shooting. They brought him in as a witness."). The detective stated:

- 10 -

> When I completed my interview, I sat [Bundy] back out on the bench where he first came from, and I let him know as soon as we are done interviewing the officers that brought you in, you are going to be getting out of here.

*Id.* at 156. Bundy was not handcuffed, and was given food. *See id.* at 217-219. Sometime after speaking with the officers who transported Bundy to the station, the detectives determined there were inconsistencies in Bundy's account. *See id.* at 165. It was at that point he became a suspect. Accordingly, because at the time of the first interview, Bundy was not in custody, *Miranda* warnings were not required. Therefore, we agree with the PCRA court that there is no arguable merit to his claim that counsel should have filed a motion to suppress his first statement.

With regard to his second statement, Bundy's argument focuses on his claim that the second *Mirandized* statement was tainted by the first, non-*Mirandized* statement. *See* Bundy's Brief at 12. Because we have concluded the first statement did not require *Miranda* warnings, we agree with the PCRA court that the second statement was not tainted. *See* PCRA Court Opinion, 6/7/2018, at 7. Furthermore, to the extent Bundy contends his second statement was involuntary, we find this claim is undeveloped, and therefore waived. Bundy cites one case for the proposition that "[e]xtended time in custody" can undermine the voluntariness of a defendant's statement. Bundy's Brief at 12. His entire argument on this issue is limited to the following:

> [Bundy] was in custody for thirty hours prior to giving the second statement and he was bullied into making a statement because

> police stated that [he] was lying with no timely cutoff unless a
> confession occurred.

*Id.* at 13. He provides no further argument, citation to relevant authority, or explanation as to why his statement was involuntary. Accordingly, we find this claim waived.[8] *See Commonwealth v. Rhodes*, 54 A.3d 908, 915 (Pa. Super. 2012) (defendant waived issue when he failed to "adequately develop [the] argument").

In his final claim, Bundy challenges the PCRA court's refusal to grant him an evidentiary hearing on his claim that trial counsel was ineffective for failing to object to prosecutorial misconduct. *See* Bundy's Brief at 14-15. Specifically, Bundy asserts the prosecutor improperly elicited testimony "about a receipt for $500 from a lawyer that was in [Bundy's] possession when arrested." *Id.* at 14. He insists this testimony was improper because it implied he either had a criminal record, or he anticipated his arrest for this crime:

> Presently, the mention of a receipt for $500 from a lawyer
> in [Bundy's] possession implied prior criminality because no young
> men pay lawyers for anything other than crimes, especially those
> who are charged with Murder before a jury. Moreover, and
> potentially worse, the information would imply consciousness of

---

[8] It merits mention the PCRA court found Bundy's second statement was voluntary under the totality of the circumstances. *See* PCRA Court Opinion, 6/7/2018, at 8 (noting Bundy was "unrestrained, given food and water, allowed to use the restroom and was not injured or ill."). Further, the court concluded the record did not support Bundy's assertion that he was "abused or threatened into confession to police." *Id.* at 8-9. We find no basis to disagree.

guilt in the present case because it implies that [Bundy] was giving money to an attorney in the present matter in anticipation of arrest.

*Id.* at 15.[9]

It is well-settled that "generally no reference may be made at trial in a criminal case to a defendant's arrest or incarceration for a previous crime[.]" ***Commonwealth v. Johnson***, 838 A.2d 663, 680 (Pa. 2003), *cert. denied*, 543 U.S. 1008 (2004). Nevertheless, "there is no rule in Pennsylvania which prohibits reference to a defendant's incarceration awaiting trial or arrest for the crimes charged." ***Id.***

The receipt recovered from Bundy's car was referred to in the following context. After Bundy was arrested, the police obtained a search warrant for his car. Detective Francis Kane executed the warrant and described the items recovered from the automobile as he displayed them to the jury:

[There is] a Motorola cell phone.

One is a receipt from a lawyer's office in the amount of $500, and it was received from Nathan Bundy.

This is a Home Depot – looks like a bill from Home Depot in the name of Nathan Bundy.

This is a correspondence of Community Bank in the name of Nathan Bundy.

---

[9] While Bundy raised this same issue in his second amended PCRA petition, the claim in his brief differs slightly from the issue listed in his concise statement, where he asserted his "pretrial detention was clearly elicited." Statement of Matters Complained of on Appeal Pursuant to Pennsylvania Rule of Appellate Procedure 1925, 4/8/2018, at 2. However, we decline to find waiver on this basis. ***See*** Pa.R.A.P. 1925(b)(4)(v) ("Each error identified in the Statement will be deemed to include every subsidiary issue contained therein which was raised in the trial court").

> And this is a sales receipt from Raymour & Flanigan Furniture in the name of Nathan Bundy.

N.T., 5/11/2009, at 8-9. That was the sole reference at trial to the lawyer's receipt.

The PCRA court disposed of this claim as follows:

> Here, reference to the receipt for legal services found in [Bundy's] possession was made in passing and not improper. … This Court rejects [Bundy's] claim that the receipt implies prior criminality "because no young men pay lawyers for anything other than crimes…." The testimony regarding the receipt was made within a list of items found in [Bundy's] possession. It was not highlighted nor was any specific information regarding the nature of the legal service given. Furthermore, as the Supreme Court stated in ***Johnson***, "there is no rule in Pennsylvania which prohibits reference to a defendant's incarceration awaiting trial or arrest for the crimes charged." [Bundy] has failed to establish that trial counsel was ineffective for failing to object to the testimony regarding the receipt because testimony regarding the receipt for legal services was made in passing and reference to a defendant's pretrial incarceration is not improper. Thus, this claim is without arguable merit.

PCRA Court Opinion, 6/7/2018, at 9-10 (citations omitted).

We agree with the trial court's conclusion that this issue has no arguable merit. Moreover, even if Bundy could demonstrate he met the first prong of the ineffectiveness test, he has failed to establish how this brief, passing reference to a receipt from a lawyer for undisclosed services prejudiced him. Accordingly, no relief is warranted.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/7/19