J. S25045/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| BRYANT LAMONT McCASKILL, | : | No. 1246 EDA 2016 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, January 20, 2016,
in the Court of Common Pleas of Monroe County
Criminal Division at No. CP-45-CR-0000084-2015

BEFORE:  BENDER, P.J.E., RANSOM, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED JUNE 27, 2017**

Bryant Lamont McCaskill appeals ***pro se*** from the January 20, 2016 judgment of sentence entered in the Court of Common Pleas of Monroe County after a jury convicted him of retail theft and receiving stolen property.[1]  The trial court sentenced appellant to 21 months to 48 months of imprisonment.   We affirm appellant's convictions and remand with directions.

The trial court summarized the facts, as gleaned from the trial transcript, as follows:

> The theft that was the subject of these charges occurred on October 23, 2014.  Yavonne Howell was the Commonwealth's first witness.  She testified that she was the store manager of the Rite Aid store in Mt. Pocono, Pennsylvania on the day the theft

---
[1] 18 Pa.C.S.A. §§ 3929(a)(1) and 3925(a).

occurred. She opened the store at 7:00 a.m. and worked until 4:00 p.m. that day. While she was crouching down in the cosmetics aisle removing and replacing merchandise, a man came up to her and said[, "E]xcuse me, can I ask you where something is?" He was looking for reusable shopping bags "for trick or treat because it was in October." The bags were for sale, and were "purple and orange with pictures of ghosts or goblins on them for Halloween." The man was African-American. He wore tan boots "like a construction boot but newer." He had on white long johns with shorts over them. He wore a vest with a hoodie underneath. He was walking with a cane. Ms. Howell told the man where the bags were and he walked away from her. She did not see him in person again in the store.

The next shift supervisor came to work at the end of the day and noticed that the store's supply of boxed condoms was missing. He also found a tag from a Halloween bag on the floor near the condom rack. There was also a "trail from the condom section out to the door . . . there were four boxes, maybe five that were dropped on the floor."

The store had security cameras operating in the store and microchips in the merchandise. The Commonwealth introduced digital security footage of the store that day. The video depicted a man carrying three reusable shopping bags out of the store. Ms. Howell identified him as the man she was talking to earlier in the store. According to the store "inventory gun" there were three reusable shopping bags missing that had not been paid for. She recalled that the alarm did sound at the rear exit door that day. The inventory gun also showed that "a ton of boxes of condoms" were missing. The missing bags and condoms were valued at $814.48. The inventory gun is linked to the cash register, so Ms. Howell knew the items had not been paid for.

The Commonwealth called Charnae Warren as its next witness. Ms. Warren was employed as a pharmacy technician in the Rite Aid on the day of the

theft. She was working the 11:30 to 7:00 shift. She testified that a man by the name of "Lamont McCaskill" came to the pharmacy station in the Rite Aid seeking to fill a prescription. She described him as having "really long hair, and he was wearing like a hoodie type vest thing." He had on boots and was walking with a cane. She identified the individual as [appellant], whom she pointed out in the courtroom. She remembered that he had produced a Pennsylvania driver's license as identification.

The Assistant District Attorney then played the security video of the man walking through the store carrying the full bags and she identified the person depicted as [appellant].

[Appellant] testified that he did go to the Rite Aid Pharmacy that day to pick up his pain medication. He said he was wearing different clothing than the description given of him by the store clerks. He testified that he did not steal the condoms that day. He was unable to fill his prescription there, and went to another Rite Aid to get his prescription filled.

Yavonne Howell testified on rebuttal that she was at the store the whole day until after 5:00 p.m. She did not see anyone else in the store with a description similar to [appellant] that day. She saw no one else with a cane.

Trial court opinion, 4/8/16 at 2-4, incorporated into statement pursuant to Pa.R.A.P. 1925(a), 5/17/16 (citations to notes of testimony omitted).

The record reflects that Public Defender David W. Skutnik represented appellant at trial. The record further reflects that the trial court ordered appellant to appear for sentencing on June 29, 2015. Appellant failed to appear, and the trial court issued a bench warrant. Following appellant's

arrest approximately 7 months later, the trial court imposed sentence on January 20, 2016. Public Defender Skutnik filed timely post-sentence motions, including a motion for judgment of acquittal that challenged the sufficiency of the evidence and a motion for reconsideration of sentence. The trial court then set a briefing and argument schedule. Appellant filed a counseled brief, but also submitted a handwritten "Defendant Supplemental Brief," which was forwarded to Public Defender Skutnik pursuant to the March 14, 2016 order of the trial court. (Order of court, 3/14/16.) On April 8, 2016, the trial court denied appellant's post-sentence motions.

On April 22, 2016, appellant filed a timely counseled notice of appeal to this court. The trial court ordered appellant to file a concise statement of errors complained of on appeal in accordance with Pa.R.A.P. 1925(b). Appellant filed a timely counseled Rule 1925(b) statement wherein he raised two issues: "the evidence presented at time of trial was insufficient for the jury to convict him of retail theft and receiving stolen property" and the "sentence imposed by the trial court was excessive." (Appellant's "Cocise [sic] Statement of Matters Complained of," 5/16/16.) During this time period, appellant began writing letters to the Clerk of Courts of Monroe County wherein he stated, among other things, that he "will not [and] refuse[s] to be represented by David Stutnick [sic] or any attorney from Monroe County's Commonwealth Public Defender Office" and "inform[ing] this court [that he will] proceed from this point forward in 'propia persona' or

simply pro-per-pro se and in forma pauperism." (Correspondence from appellant to "Chief Deputy Clerks of Court of Count [sic] of Common Pleas Monroe County," dated 4/16/16 (capitalization and underscoring omitted; errors in original). Then, on May 17, 2016, the trial court filed its Rule 1925(a) statement.

On July 7, 2016, appellant filed a *pro se* motion to this court requesting to proceed with his direct appeal *pro se*. On the same day, this court entered an order directing the trial court to conduct a *Grazier*[2] hearing. On August 25, 2016, the trial court conducted the hearing and, on the same day, entered an order granting appellant's petition for leave to proceed *pro se* and withdrawing the appearance of Public Defender Skutnik.

On September 6, 2016, appellant filed a *pro se* Rule 1925(b) statement wherein he raised 9 claims of error. (Docket #35.) On September 14, 2016, the trial court filed a response to appellant's *pro se* supplemental Rule 1925(b) statement finding the issues waived because appellant did not request leave of court to file a supplemental statement and because Pa.R.A.P. 1925 makes no provision for the filing of a supplemental statement under such circumstances. (Docket #36.) Appellant then filed a *pro se* motion to amend his Rule 1925(b) statement with this court. This court granted appellant's motion and afforded appellant 21 days to file his supplemental statement and ordered the trial court to address appellant's

---

[2] *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998).

supplemental statement by filing a supplemental Rule 1925(a) opinion.

Appellant timely complied and raised the following 6 issues, framed as

follows:

1. The trial court erred in allowing insufficient evidence letting the Commonwealth's Prosecutrix perform Prosecutorial Misconduct by Suppressing Destroying, Crucial evidence, with holding Exculpatory evidence, by her refusal to play the entire video surveillance footage of the Rite aide pharmacy area.

2. Trial court erred allowing Commonwealth's witnesses Hearsay within Hearsay testimonies. Where such testimonies evidence only proved appellant's "mere presence at or near the scene of the crime". Not committing or participating in a crime, "where all Reasonable Inferences" were equally consistent with appellant's innocence as with guilt.

3. Whether the trial court erred in allowance of Police Officer Chafee's Unnecessarily and Unduly suggestive Police Identification, immensely violated appellant's Due process, which was woefully incosistent and inconclusive when compared to appellant's Physical composition, Stature and the Commonwealth's witnesses identity testimonies at trial. Which resulted in an Irreparable Misidentification of appellant as the perpatrator. Which contributed to him being wrongfully convicted under the totality of the circumstances.

4. The trial court erred allowing the Commonwealth to commit Constitutional Violations in open court during the Voir Dire Proceeding at the out-set of appellant's trial. With it's exclusion of 90%-99% of all African American jurors by race-base Peremptory Challenge Strikes on solely African Americans.

Resulting in only one African American male present on appellant's jury panel at trial.

5. Whether the trial court erred with the illegal sentence imposed by the trial Judge was Unconstitutional, by the use of prior Out-Of-State felony convictions that were sealed over 22 years when calculating appellant's record score as Repeat Felony Offender, simutanoeusly improperly increasing the sentence floor based absent a Jury's Finding of Facts that support the Mandatory Sentence. Appellant was incarcerated 109 days on the offenses before sentencing January 20 2016. Trial court denied the time credit refused to credit appellant. Pursuant to 42. Pa.C.S.A. 9760 part(1)(3)(4) appellant is entitled to credit.

6. The trial court erred when it failed to conduct a cumulative evaluation, why such adeficient representation by defense counselor David Stunik prior to and during trial. Which violated appellant's 6th amendment right to a full defense guaranteed under the united states constitutional amendments. The defense counselor's ineffective assistance so underminded the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. That significantly caused a Fundemental Misscarriage of Justice in this case.

Appellant's "Concise Supplemental Statement of Matters Complained of on Appeal Pursuant to [Pa.R.A.P.] 1925(b), 10/28/16" (countless errors in original). The trial court addressed appellant's issues in its supplemental Rule 1925(a) opinion.

Appellant now raises 22 issues for our review.[3] In reviewing the issues

raised in appellant's supplemental Rule 1925(b) statement and the

_____

[3] Appellant frames his issues as follows:

> 1. Whether there was sufficient evidence to find appellant guilty beyond a reasonable doubt?
>
> 2. Whether the Commonwealth proved all the essential elements of the retail theft and receiving stolen property offenses to a Rational Trier Ot Fact that appellant committed such crimes?
>
> 3. Did the Commonwealth violate appellant's Due Process by suppressing material exculpatory evidence?
>
> 4. Whether the evidence and all Reasonable Inferences were equally consistent with appellant's innocence?
>
> 5. Whether the Prosecutrix violated the Brady Rule and performed Misconduct by refusing to play the entire video surveillance footage of Rite aide pharmacy area?
>
> 6. Whether the evidence was insufficient to convict appellant in that commonwealth proved only appellant's Mere Presence At or Near the Scene of the Crime?
>
> 7. Did the Commonwealth admit Unreliable, Unconstittutional and Improper evidence in violation of the 5th, 6th, 8th, and 14th amendments of the United States Constitutional Amendments?
>
> 8. Whether the prosecutor and trial court violated appellant's constitutional and civil rights with illegal race-base [sic] peremptory challenge strikes on solely African American jurors?

9. Whether Officer Chaffee's pretrial identification so Unduly Suggestive that it created very Substantial Likelihood of a irreparable Misidentification?

10. Whether Commonwealth's Chief witness Ms. Howell entire testimony was Inadmissible Hearsay within Hearsay?

11. Did the Commonwealth violated Federal Rule of Evidence § viii 805?

12. Whether officer Chaffee ever found on or in appellant's possession any condoms or boxes from Rite aide?

13. Whether any Employee of Rite aide seen appellant conceal any condoms or merchandise at anytime while in the store trying to get his prescription filled?

14. Did the Video surveillance show appellant or any African American male dropping merchandise or merchandise falling out of any bags period on the video footage at anytime during trial?

15. Whether the video footage simply show an African American male entering and leaving the store which is not a crime?

16. Whether tyrranical bias trial Judge aggravated and calculated appellant's sentence at sentencing proceedings off Out-of-State N.Y. 31 year old and 22 year old sealed convictions that was past the legal staue limitations in both the states of New York and Pennsylvania?

17. Did the trial court err when the court didnot seek were prior out-of-state convictions "Malum in Se" or "Malum Prohibitum" or

arguments he attempts to make in his rambling and, for the most part, incoherent brief, the gravamen of appellant's complaints are (1) that the evidence was insufficient to prove that appellant was the individual who stole the condoms; and (2) that the trial court improperly considered appellant's prior convictions in New York when calculating his record score and failed to give appellant credit for time served. To the extent that appellant raises

---

inchoate or specific to the commowealth's 18 Pa. 3829(a)(1),3925(b)?

18. Did the trial court err by not taking into account the "Actus Reus" and Mens Rea" of N.Y.S. covictions?

19. Did the trial court err imposing a sentence for Repeat Felony Offender 21-48 months for pior out-of-state offenses not charged in the Indictment nor Elements of the crime sentencing appellant to illegal Mandatory Minimum Sentence?

20. Whether the trial court err when it refused to consider appellant's Physical Disabilities and Medical records as to corroborate appellant's incapability to commit the crimes he was wrongly convicted of?

21. Whether the trial court err denying appellant's Supplementle Pro se post sentencing Brief, Post Sentencing Motions?

22. Whether the trial Judge incorrectly disallowed appellant his time credit for time served?

Appellant's brief at 1-2 (countless errors in original; random bolding omitted).

new issues within the 22 issues that he sets forth in his "question for grounds to rewiew [sic] for errors [and] violations" section of his brief, appellant waives those issues on appeal for failure to include them in his Rule 1925(b) statement. Pa.R.A.P. 1925(b)(4)(vii) (issues not included in the Rule 1925(b) statement are waived).

Prior to addressing appellant's sufficiency of the evidence claim and his sentencing challenges, we will address appellant's four other complaints.

Appellant complains that the trial court erred in permitting the Commonwealth to play a portion of the Rite Aid surveillance video footage to the jury, as opposed to the entire video, which was several hours long. Our review of the record reveals that appellant failed to object when a portion of the video was played for the jury and when the video was admitted into evidence. It is well settled that a "[f]ailure to raise a contemporaneous objection to the evidence at trial waives that claim on appeal." **_Commonwealth v. Thoeun Tha_**, 64 A.3d 704, 713 (Pa.Super. 2013) (citations omitted); **_see also_** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Therefore, appellant waives this issue on appeal.

Appellant next complains that the trial court erred when it permitted Commonwealth witnesses to testify to "hearsay within hearsay." (Appellant's brief at 20.) A reading of this section of appellant's brief, however, demonstrates that the crux of appellant's complaint with respect to

this issue is that there was inconsistent testimony presented at trial. Appellant fails to cite to that portion of the trial transcript where he lodged a hearsay objection that the trial court overruled, and our review of the record reveals none. To the extent that appellant complains that the trial court permitted "hearsay within hearsay" testimony that appellant failed to object to, appellant waives the issue on appeal. **See Thoeun Tha**, 64 A.3d at 713; **see also** Pa.R.A.P. 302(a).

Appellant next complains that the trial court erred in permitting a police officer to identify appellant from video surveillance. Appellant advances no argument in his brief with respect to this issue. Rather, appellant complains that the police officer's "pretrial identification on his affidavit of probable cause was unreliable, and apart from that a woefully suggestive police identification because it created a very substantial likelihood of irreparable misidentification and was unnecessarily suggestive." (Appellant's brief at 9.) Appellant waives this issue on appeal for failure to develop a meaningful legal argument and failure to cite to relevant legal authority). **See** Pa.R.A.P. 2119; **see also Commonwealth v. Rhodes**, 54 A.3d 908, 915 (Pa.Super. 2012) (an appellant's failure to set forth a relevant legal analysis and/or to cite to relevant legal authority results in waiver).

Appellant next complains that the Commonwealth utilized race-based challenges to exclude African Americans, like appellant, from the jury. Although appellant preserved this claim by objection during **voir dire**, he

advances no meaningful legal argument to demonstrate that the trial court's decision on the ultimate question of discriminatory intent was clearly erroneous. Rather, appellant makes bald assertions and cites to irrelevant authority. For example, appellant states, "[a]s a further testament, Commonwealth's Prosecutrix invariably interspersed her racist and mendacious declarations with pious avowals under the color [sic] the Commonwealth of the State of Pennsylvania's law," followed by a citation to a United States Supreme Court case that was decided in 1906. (Appellant's brief at 19.) Because appellant has failed to advance any meaningful legal argument or citation to relevant law, appellant waives this issue on appeal. *See id.*

Nevertheless, we note that in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court set forth a three-step process to evaluate racial discrimination claims. First, the defendant must make out a *prima facie* case that the prosecutor has employed race-based challenges. *Commonwealth v. Cook*, 952 A.2d 594, 602-603 (Pa. 2008). Second, the prosecution must then offer a race-neutral explanation for striking the juror. The second prong does not demand an explanation that is persuasive, or even plausible. Rather, the issue at that stage is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral. *Id.* Third, the trial court must

determine whether the defendant has proven purposeful discrimination. "[T]he trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal and will not be overturned unless clearly erroneous." *Id.* at 603.

Here, our review of the record demonstrates that the following took place:

> [DEFENSE COUNSEL]: Judge, I wish to make a challenge to the Commonwealth striking Juror No. 1 in this matter who is African American. And there are about three African Americans on the panel, and I think there are two Hispanics. The rest of the panel is Caucasian. So I have a challenge as to why the Commonwealth is striking an African American from the panel.
>
> THE COURT: You are just referring to the striking of Juror No. 1?
>
> [DEFENSE COUNSEL]: Yes, Juror No. 1.
>
> [THE COMMONWEALTH]: It's based on being a yes answer to Question No. 9.
>
> [DEFENSE COUNSEL]: Which is?
>
> [THE COMMONWEALTH]: Are you less likely to believe a police officer?
>
> [DEFENSE COUNSEL]: That's it?
>
> [THE COMMONWEALTH]: It's my procedure. Those yes answers are always going.
>
> [DEFENSE COUNSEL]: All right.
>
> THE COURT: The challenge is noted and denied.

Notes of testimony, 4/7/15 at 18. The record supports the trial court's conclusion that the Commonwealth gave a credible race-neutral reason for excluding Juror Number 1, which was the stricken juror's admission that he was less likely to believe a police officer.

Appellant next complains that trial counsel was ineffective. Appellant's claim of ineffectiveness of counsel, however, must be deferred to collateral review pursuant to the dictates of our supreme court in **Commonwealth v. Grant**, 813 A.2d 726 (Pa. 2002), wherein our high court held that a claim of ineffective assistance of counsel cannot be entertained on direct appeal. **See Commonwealth v. Barnett**, 25 A.3d 371, 377 (Pa.Super. 2011) (**en banc**) (pursuant to **Grant**'s refinement in **Commonwealth v. Liston**, 977 A.2d 1089 (Pa. 2009), and **Commonwealth v. Wright**, 961 A.2d 119, 148 n.22 (Pa. 2008), the Pennsylvania Superior Court is not permitted to review ineffective assistance of counsel claims on direct appeal, unless the defendant has expressly, knowingly, and voluntarily waived PCRA review). Because nothing indicates that appellant expressly waived PCRA review, we must defer resolution of his ineffective assistance of counsel claim to collateral review pursuant to the dictates of **Grant** and its progeny.

With respect to appellant's sufficiency claim, a review of appellant's brief on this issue demonstrates that appellant does nothing more than challenge the trial evidence in an attempt to convince this court that he did not steal the condoms. For example, he argues that the person seen on the

video surveillance "walked normal" into the store and that appellant walks with a limp and that just because appellant was in the store does not mean that he committed the crime. (Appellant's brief at 10, 12.) Essentially, appellant argues that the jury should have believed appellant's testimony over the Commonwealth's evidence. In so doing, appellant challenges the weight of the evidence, not its sufficiency. *See*, *e.g.*, *Gibbs*, 981 A.2d at 281-282 (an argument that the fact-finder should have credited one witness' testimony over that of another witness goes to the weight of the evidence, not the sufficiency of the evidence); *Commonwealth v. Wilson*, 825 A.2d 710, 713-714 (Pa.Super. 2003) (a review of the sufficiency of the evidence does not include a credibility assessment; such a claim goes to the weight of the evidence); *Commonwealth v. Gaskins*, 692 A.2d 224, 227 (Pa.Super. 1997) (the fact-finder makes credibility determinations, and challenges to those determinations go to the weight of the evidence, not the sufficiency of the evidence).

At the outset, we note that we will give appellant the benefit of the doubt in finding that he preserved his weight claim in his post-sentence motion for a new trial. *See* Pa.R.Crim.P. 607(A)(3).

> The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.
>
> . . . .

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> . . . .
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Clay*, 64 A.3d 1049, 1054-1055 (Pa. 2013) (citations and quotation marks omitted). "In order for a defendant to prevail on a challenge to the weight of the evidence, 'the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.'" *Commonwealth v. Talbert*, 129 A.3d 536, 546 (Pa.Super. 2013).

Here, appellant invites this court to reassess his credibility and reweigh the Commonwealth's evidence. We decline his invitation to do so. The jury, as fact-finder, had the duty to determine the credibility of the testimony and evidence presented at trial. *Talbert*, 129 A.3d at 546 (citation omitted). Appellate courts cannot and do not substitute their judgment for that of the fact-finder. *See id.* Here, a jury of appellant's peers found the

Commonwealth's evidence to be credible. After carefully reviewing the record, we conclude that the trial court properly exercised its discretion in denying appellant's motion for a new trial.

Finally, in a rambling, convoluted argument, appellant advances two sentencing challenges. Appellant first claims that his sentence is illegal because the trial court considered previous out-of-state convictions when calculating his prior record score which, according to appellant, is a fact that increased the penalty for the crime that must be treated as an element of the offense pursuant to **Alleyne v. United States**, 133 S. Ct. 2151, 2163, 186 L. Ed. 2d 314, ___ (2013). Appellant is mistaken. A claim that the sentencing court miscalculated a defendant's prior record score is a challenge to the discretionary aspects of sentence. **See Commonwealth v. Provenzano**, 50 A.3d 148, 154 (Pa.Super. 2012) (the improper calculation of a prior record score based on out-of-state offenses raises a substantial question for purposes of discretionary review of a sentencing challenge). In **Alleyne**, the United States Supreme Court held that a criminal defendant has a constitutional right to have a jury decide the existence of any fact, other than a prior conviction, beyond a reasonable doubt if that fact triggers application of a mandatory minimum sentence. Here, **Alleyne** is not implicated because it does not provide a constitutional right for a jury to decide the existence of a prior conviction and the crimes for which appellant was convicted carry no mandatory minimum sentences because both

offenses were graded as first-degree misdemeanors. **See** 18 Pa.C.S.A. § 106(b)(6) ("a person convicted [of a first-degree misdemeanor] may be sentenced to a term of imprisonment, the maximum of which is not more than five years"). Therefore, appellant's challenge to the computation of his prior record score is a challenge to the discretionary aspects of his sentence.

> [T]he proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion. . . . [A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. In more expansive terms, our Court recently offered: An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.
>
> The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it.

**Commonwealth v. Moury**, 992 A.2d 162, 169-170 (Pa.Super. 2010) (citation omitted; brackets in original).

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. **Commonwealth v. Sierra**, [752 A.2d 910, 912 (Pa.Super. 2000)]. An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

**Moury**, 992 A.2d at 170 (citation omitted; brackets in original).

Here, the record reflects that appellant filed a timely notice of appeal. In his post-sentence motion, appellant raised two sentencing challenges. In his first challenge, appellant claimed that "the sentence imposed was excessive for the nature of the offenses for which [appellant] was found guilty" and appellant "believes that he is entitled to a time credit from October 28, 2015 which is when he completed serving a twenty day sentence in Kings County, New York." (Motion for reconsideration of sentence, 2/1/16 at 7 ¶ 14.) In his brief in support of post-sentence motion, appellant advances no argument on his sentencing challenges except that appellant "requests [that the trial court] reconsider the sentence imposed in light of [appellant's] age." (Brief in support of post-sentence motion, 3/14/16 at 5.) Appellant, therefore, failed to preserve his challenge that the trial court miscalculated his prior record score.

In his final issue, appellant challenges the legality of his sentence contending that he was not given credit for time served.

It is axiomatic that "challenges to an illegal sentence can never be waived and may be reviewed sua sponte by this Court." *Commonwealth v. Tanner*, 61 A.3d 1043, 1046 (Pa.Super. 2013) (citation omitted). It is equally well established that Pennsylvania law does not tolerate an illegal sentence, for "[a] challenge to the legality of a sentence . . . may be entertained as long as the reviewing court has jurisdiction." *Commonwealth v. Borovichka*, 18 A.3d 1242, 1254 (Pa.Super. 2011) (citation omitted). "If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction." *Commonwealth v. Hopkins*, 67 A.3d 817, 821 (Pa.Super. 2013) (citation omitted), *appeal denied*, 78 A.3d 1090 (Pa. 2013). "An illegal sentence must be vacated." *Id.* "Issues relating to the legality of a sentence are questions of law[; as a result, o]ur standard of review over such questions is de novo, and our scope of review is plenary." *Commonwealth v. Delvalle*, 74 A.3d 1081, 1087 (Pa.Super. 2013) (citations omitted). In sentencing a defendant, the trial court is bound by the statutory provision mandating credit for time served found at 42 Pa.C.S.A. § 9760.

Here, the issue of credit for time served was addressed at appellant's sentencing hearing as follows:

[DEFENSE COUNSEL]: [Appellant], the first question you have to answer to the Court is why didn't you appear for sentencing?

[APPELLANT]: I didn't appear for sentencing -- I had a civil suit in New York, that I went to go get my money from over there. After that I had to call and tell him I was going to come back, but I got into trouble.

[DEFENSE COUNSE]: He had litigation in New York and he didn't appear. Then subsequent to that, Your Honor, he was arrested in New York and did 30 days. I was in touch with counsel from New York, and I explained to them that there was a bench warrant that had been issued by Your Honor for him.

In talking with the sheriff's department, my understanding is that he signed a waiver of extradition to come back to Pennsylvania to deal with this.

[APPELLANT]: I was locked up 109 days. Out of that 109 days I did 30. My case was over on October 28th, 2015. So they held me up until yesterday, all that time just sitting there waiting. I kept asking and everybody [sic]. I'm still here.

[DEFENSE COUNSEL]: So apparently he did his 30 days in New York, and since that time he's hopefully been accruing time with regards to the sentence that was imposed on him.

THE COURT: Accruing time on what?

[DEFENSE COUNSEL]: Accruing time on this case for a time credit, hopefully, when the sentence is imposed in this matter. He was sentenced to 30 days in New York.

How many days were you sitting in the jail in New York?

[APPELLANT]: Like 79 or 80, just sitting there waiting.

[DEFENSE COUNSEL]: Does that include the 30 days that you did?

[APPELLANT]: Yes.

[DEFENSE COUNSEL]: All right. You were sitting in New York [sic] jail for 80 days. Out of that 80 days, 30 days were part and parcel of the sentence that the New York judge imposed?

[APPELLANT]: Out of 109 days, 30 days was for the sentence that they gave me for a misdemeanor.

[DEFENSE COUNSEL]: We've gone from 80 days to 109 days.

[APPELLANT]: That's excluded 30 days because I was locked up. I got locked up October 7th. The case was over October 28th. November 28th, December 28th, and the 19th was yesterday -- that's 79 days.

THE COURT: Do we know anything about time credit on the New York sentence?

[THE COMMONWEALTH]: Judge, probation doesn't know. What I have here is I have paperwork -- I can provide the Court a copy -- from New York where it indicates [appellant] was in their custody on October 8th, 2015, that he refused extradition. And we had to go and get a Governor's warrant, which I have right here, to get him extradited here.

It indicates that he was given -- I don't know. It has 90 days. The 90 days were up on January 6th, I guess, 2016. That's when he was released into our custody. I don't know if he received a 90-day sentence in New York or what happened. I'll show it to Defense Counsel, Judge, and then I'll show it to the Court.

- 23 -

This is from New York where it says he refused extradition.

(Brief pause)

THE COURT: How many did he waive after the fact? I'm not quite sure about that.

DEPUTY SHERIFF: I think Carol Doss called me and said after they received the Governor's warrant he decided to waive before that made it there. New York gives us a set date and time to pick up, which was yesterday at 10:00 a.m.

(Brief pause.)

THE COURT: So from the Commonwealth's perspective, [appellant] has accrued time on this sentence from January 6th?

[THE COMMONWEALTH]: Yes, Judge, that's what I would say. Because I don't know what held him in New York, if it's additional charges. It looks like there's something with 90 days. He might receive a 90-day sentence.

I would say right now, without some kind of verification, it would be from January 6th from our perspective. That's when it looks like he was eligible to be released.

THE COURT: There's a note here saying 90 days, January 6th, 2016.

[THE COMMONWEALTH]: That would be 90 days from October 8th when he was apprehended.

[DEFENSE COUNSEL]: I will have to look into that, Judge.

THE COURT: What's that?

> [DEFENSE COUNSEL]: I'll have to look into that with the authorities of New York. [Appellant] is telling me something else, but I will have to figure that out.
>
> THE COURT: I will give [appellant] 14 days['] credit on his sentence today, and if there's some other evidence saying that number is wrong, then you can file a motion --
>
> [DEFENSE COUNSEL]: That will be taken care of.
>
> THE COURT: -- for modification of sentence.
>
> [DEFENSE COUNSEL]: That will be fine.

Notes of testimony, 1/20/16 at 2-6.

The record reflects that in his post-sentence motion, appellant sought reconsideration of sentence based on his "belie[f] that he is entitled to credit from October 28, 2015 which is when he completed serving a twenty day sentence in Kings County, New York." (Appellant's post-sentence motion, 2/1/16 at 7, ¶ 14(b).) Appellant failed to brief the issue and offered no evidence to show that he was entitled to credit for time served beyond the 14 days that the trial court determined was due at sentencing based on evidence presented at that time.

The record further reflects that following the filing of his notice of appeal to this court on April 22, 2016, the trial court entered an order dated October 4, 2016 in which it ordered a hearing to be held on appellant's "petition for time credit filed on August 29, 2016." The certified record before us does not contain appellant's August 29, 2016 petition for time credit. It does, however, contain the transcript of proceedings held on

October 25, 2016. At that time, this court had remanded the case to the trial court for the limited purpose of permitting appellant to file a supplemental Rule 1925(b) statement and for the court to file a supplemental Rule 1925(a) opinion in response, but this court retained jurisdiction. As such, the trial court found that it did not have jurisdiction to entertain appellant's petition for time credit. (Notes of testimony, 10/25/16 at 3-7.)

Because the trial court never entertained appellant's petition for time credit for lack of jurisdiction and because the certified record before us fails to establish that appellant has been credited for all time served, we will affirm appellant's convictions, but must remand and direct the trial court to hold a hearing on appellant's petition for time credit within 60 days. Following the trial court's resolution, it should resentence appellant.

Convictions affirmed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/27/2017