J-S60041-18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| VINCENT ANTHONY CATRONE, | : | |
| | : | |
| Appellant | : | No. 1371 MDA 2017 |

Appeal from the Judgment of Sentence April 11, 2014
in the Court of Common Pleas of Luzerne County
Criminal Division at No(s): CP-40-CR-0004713-2008

BEFORE:     SHOGAN, J., NICHOLS, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:                **FILED JUNE 28, 2019**

Vincent Anthony Catrone (Appellant) appeals from the April 11, 2014 judgment of sentence imposed after a jury convicted him of, *inter alia*, three counts of involuntary deviate sexual intercourse (IDSI) for acts committed against his stepdaughter, A.M.  On January 10, 2019, we remanded the case for the trial court to rule on Appellant's weight-of-the-evidence claim under the appropriate standard and to write a supplemental opinion within 30 days.  The trial court filed its supplemental opinion on April 18, 2019, and the remainder of Appellant's case is now ready for disposition.  Upon review, we affirm in part and vacate in part.

By way of background, in our January 10, 2019 memorandum opinion we detailed the underlying facts and procedural history of this case.

_____

*Retired Senior Judge assigned to the Superior Court.

When A.M. was 10 years old, Appellant began to digitally fondle and penetrate A.M.'s vagina during her bathtime. This continued on a near-monthly basis. When she was 12 years old, Appellant additionally began attempting to insert small objects, such as a cucumber, into A.M.'s vagina during bathtime. When she was 14 years old, these bathtime assaults escalated further, with Appellant groping A.M.'s breasts, having vaginal intercourse with A.M., and having A.M. perform oral sex on Appellant. Following the vaginal intercourse and oral sex, Appellant would ejaculate onto A.M.'s face or chest. Appellant threatened A.M. with harm to her, her mother (Mother), and her half-brother, V.C.,[1] if she reported these assaults.

_____

[1] V.C. is the son of Appellant and Mother.

When A.M. was approximately 15 years old, Appellant temporarily moved out of the house and the monthly assaults ceased. However, on one occasion when A.M. was visiting her stepfather at his new residence with V.C., Appellant subjected A.M. to vaginal intercourse in his bedroom while he simultaneously watched a pornographic video. Appellant thereafter moved back in with Mother. A.M. moved out of her Mother's house when she was 17 years old. Following that, only two incidents with Appellant occurred, both when A.M. was 18 years old. On the first occasion, Appellant attempted to have A.M. perform oral sex on him when she visited Mother's home, but she was able to leave the residence without doing so. The next time she went to Mother's home, A.M. was subjected to performing oral sex on Appellant.

Following the last incident, A.M., realizing that the abuse would not stop, confided the years of abuse to Mother and filed a report with the state police in Hazelton a few days later, in October 2008. Appellant was charged with two counts of rape, four counts of IDSI, one count of unlawful contact with a minor, two counts of aggravated indecent assault, one count of statutory sexual assault, one count of indecent assault, and one count of corruption of minors.

Appellant proceeded to a jury trial on October 13-15, 2009. Prior to trial, Appellant made an oral motion *in limine* to preclude the Commonwealth from asking Mother about Appellant's sexual activity preferences, including that he watched

pornographic videos and used objects during intercourse, and preferred to ejaculate on Mother's face and chest following intercourse or oral sex. Finding that testimony to be more prejudicial than probative, and protected by marital privilege, the trial court prohibited the Commonwealth from pursuing that line of testimony. N.T., 10/14/2009, at 16-17. The next day, the jury found Appellant not guilty of the two charges of rape, but was unable to reach a unanimous verdict on the remaining charges. N.T., 10/13-15/2009, at 333-34. Ultimately, the trial court declared a mistrial on the deadlocked charges. *Id.* at 336.

Thereafter, the Commonwealth timely appealed the trial court's ruling on Appellant's motion *in limine* because it handicapped the Commonwealth's re-prosecution of Appellant. On appeal, this Court reversed the trial court's ruling, finding that the evidence was relevant, highly probative, and not protected by marital privilege. ***Commonwealth v. Catrone*** (***Catrone I***), 24 A.3d 451 (Pa. Super. 2011) (unpublished memorandum at 19).

Appellant appeared for a second jury trial on the deadlocked charges on September 24, 2012. Prior to this second trial, Appellant argued that because Appellant was found not guilty of rape by forcible compulsion, trying him again as to the remaining ten charges would "twice put him in jeopardy from similar or the same offenses[.]" N.T., 9/24/2012, at 7. The trial court denied Appellant's motion, and he proceeded to trial. *Id.* at 9. The aforementioned facts were developed, along with testimony from Mother about Appellant's sexual preferences, as well as character witnesses regarding A.M. and Appellant. Additionally, Appellant presented evidence in support of his defense that A.M. fabricated the sexual assault claims because she believed that Appellant was attempting to take part of her settlement proceeds resulting from a car accident involving Appellant, A.M., and V.C.

At the conclusion of the trial, Appellant was found guilty of three counts of IDSI, two counts of aggravated indecent assault, and one count each of unlawful contact with a minor, statutory sexual assault, and indecent assault. On April 11, 2014,[2] Appellant was found to be a sexually violent predator (SVP) and was sentenced to an aggregate term of incarceration of 23 years and 5 months to 46 years and 10 months. Due to

Appellant's IDSI conviction and SVP designation, he is required to register as a sex offender for his lifetime.

_____

[2] The reason for this delay was due in part to a sexual offender assessment and a motion for extraordinary relief filed by Appellant that was subsequently withdrawn.

Appellant timely filed a post-sentence motion.[3] The trial court denied the motion on August 14, 2017, and this timely-filed appeal followed.

_____

[3] Initially, Appellant did not file a post-sentence motion or direct appeal. Appellant twice petitioned the trial court to file a direct appeal *nunc pro tunc*, which the trial court denied. On appeal from the second denial, this Court treated Appellant's petition as one filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546, reversed the trial court order, and remanded for the reinstatement of Appellant's post-sentence and direct appeal rights. **Commonwealth v. Catrone** (**Catrone II**), 153 A.3d 1114 (Pa. Super. 2016) (unpublished memorandum at 3).

Thereafter, on September 29, 2016, Appellant filed a post-sentence motion alleging, *inter alia*, that his mandatory minimum sentences for IDSI were illegal. The trial court set a briefing schedule and Appellant complied; the Commonwealth did not. Over 120 days passed; the trial court failed to rule on the motion and the clerk of courts failed to deny the motion by operation of law. The trial court purported to schedule a resentencing hearing on the IDSI counts for May 23, 2017, but subsequently directed the clerk of courts on May 25, 2017 to enter an order reflecting that the motion had been denied by operation of law. The clerk of courts failed to do so. On June 7, 2017, Appellant again sought reinstatement of his post-sentence rights, which the trial court granted on June 9, 2017.

- 4 -

*Commonwealth v. Catrone* (*Catrone III*), ___ A.3d ___, 2019 WL 1645683 (Pa. Super. 2019) (unpublished memorandum at 1-5) (footnote omitted).

Prior to remanding, we addressed Appellant's double jeopardy claim and found no trial court error. *Id.* (unpublished memorandum at 5-7). In light of our determination that the trial court utilized the wrong standard to address Appellant's weight claim, we declined to dispose of Appellant's other claims and remanded with instructions for the trial court to file a supplemental opinion. We now address Appellant's remaining claims.

We begin with Appellant's evidentiary claims. First, we address his claim that the trial court abused its discretion when it denied his two mistrial motions. Appellant's Brief at 20. Specifically, Appellant argues that the trial court should have granted his motions for mistrial, and that the curative instructions given by the trial court were inadequate to cure the "proverbial skunk in the jury box." Appellant's Brief at 23, 25 (internal quotation marks omitted).

We review such claims mindful of the following.

> In criminal trials, declaration of a mistrial serves to eliminate the negative effect wrought upon a defendant when prejudicial elements are injected into the case or otherwise discovered at trial. By nullifying the tainted process of the former trial and allowing a new trial to convene, declaration of a mistrial serves not only the defendant's interest but, equally important, the public's interest in fair trials designed to end in just judgments. Accordingly, the trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event

may reasonably be said to deprive the defendant of a fair and impartial trial. In making its determination, the court must discern whether misconduct or prejudicial error actually occurred, and if so, … assess the degree of any resulting prejudice. Our review of the resulting order is constrained to determining whether the court abused its discretion. Judicial discretion requires action in conformity with [the] law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason.

The remedy of a mistrial is an extreme remedy required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial tribunal.

*Commonwealth v. Judy*, 978 A.2d 1015, 1019 (Pa. Super. 2009) (internal quotation marks and citations omitted).  Regarding curative instructions, we note that juries are presumed to follow the court's instructions. *Commonwealth v. Roney*, 79 A.3d 595, 640 (Pa. 2013).

During Appellant's jury trial, he twice objected to testimony and moved for a mistrial.  The first objection and motion followed Trooper James Curto's testimony that police did not contact A.M.'s gynecologist as part of its investigation because, *inter alia*, in his experience in these cases, "more often than not, [there is no] trauma to the victim."  N.T., 9/24/2012, at 206. The second objection and motion followed the rebuttal character testimony of Frederick Kobrick, who stated that Appellant's reputation in the community for moral character was "vile."  *Id.* at 285.   In both instances, the trial court sustained the objection, struck the testimony, denied the

- 6 -

motion for mistrial, and offered a curative instruction. *Id.* at 206-11, 285-90. Appellant did not object to either curative instruction.

On appeal, Appellant argues that the trial court should have granted the mistrial motions because the jury's "credibility assessment was skewed by the Commonwealth's presentation of irrelevant and prejudicial witness testimony." Appellant's Brief at 21. In its Pa.R.A.P. 1925(a) opinion, the trial court explained that it denied the mistrial motions because the objected-to remarks were very brief and the court's curative instructions cured any prejudice to Appellant. *See* Trial Court Opinion, 3/29/2018, at 17, 24.

Upon review, we agree with the trial court and find no abuse of discretion in the trial court's conclusion. *See Commonwealth v. Jones*, 668 A.2d 491, 504 (Pa. 1995) (finding trial court did not abuse its discretion in denying motion for mistrial where trial court offered curative instruction that jury is presumed to follow and to which defendant did not object at trial, and under the circumstances the challenged evidence did not deny defendant of a fair and impartial trial). Accordingly, the trial court did not abuse its discretion in denying Appellant's motions for mistrial.

We next turn to Appellant's claim that the cumulative effect of the trial court's "individual erroneous evidentiary rulings… prejudice[d] the jury against [Appellant] …, thus requiring a new [t]rial[.]" Appellant's Brief at 11, 25. Our standard of review for the admission of evidence is well-settled.

> The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion. An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party. [A]n evidentiary error of the trial court will be deemed harmless on appeal where the appellate court is convinced, beyond a reasonable doubt, that the error could not have contributed to the verdict.

*Commonwealth v. Manivannan*, 186 A.3d 472, 479–80 (Pa. Super. 2018 (citations and quotation marks omitted).

Though Appellant frames this claim as one of cumulative error, *see* Appellant's Brief at 11, in his argument section he actually contends that each individual claim of error warranted a new trial.[1] *Id.* at 26-27, 29. Specifically, Appellant argues that the trial court erred in admitting (1)

---

[1] In the heading for this argument, Appellant also challenges the trial court's denial of his objection to Trooper Curto's opinion testimony, Kobrick's rebuttal reputation testimony, and Mother's testimony regarding Appellant's sexual preferences. Appellant's Brief at 25. However, Appellant abandons these claims within the argument and fails to develop them in any meaningful way. Accordingly, we find them waived. *See Commonwealth v. Delvalle*, 74 A.3d 1081, 1086–87 (Pa. Super. 2013) ("Rule 2119(a) of the Pennsylvania Rules of Appellate Procedure provides that '[t]he argument shall ... have ... the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.' Pa.R.A.P. 2119(a). Failure by the appellant to discuss pertinent facts or cite legal authority will result in waiver. *Commonwealth v. Rhodes,* 54 A.3d 908, 915 (Pa. Super. 2012)."). Even if not waived, the trial court sustained Appellant's objections as to Trooper Curto's opinion testimony and Kobrick's rebuttal reputation testimony, as discussed *supra*, and this Court previously held that Mother's testimony about Appellant's sexual preferences was relevant. *See Catrone I*, 24 A.3d 451 (unpublished memorandum at 7-8).

A.M.'s testimony about Appellant's violent character because he was acquitted of rape by forcible compulsion at the first trial, Appellant's Brief at 25-26; (2) V.C.'s testimony about Appellant's role in a car accident involving A.M. and V.C., *id.* at 26-27; and (3) rebuttal testimony from John Trotsky that Appellant's moral character was "terrible[,]" *id.* at 27-28. We address each claim of error individually.

In its opinion, the trial court offered the following explanation for its ruling on A.M.'s testimony about Appellant's propensity for violence.[2]

> A.M. began to testify that [Appellant] was a violent person. [Appellant's] counsel objected and was initially overruled. A side[]bar then occurred in which the allowance of the testimony of [Appellant's] propensity for violence and whether or not it violated the rules of evidence was discussed. An agreement was made between the Commonwealth and [Appellant's c]ounsel wherein it was noted that A.M. could testify to her own personal relationship with [Appellant] and her own observations. A.M. testified that she actually observed [Appellant] yelling and getting angry and that she was scared of him. As such, no inadmissible testimony was heard by the jury, therefore no relief is warranted.

Trial Court Opinion, 3/29/2018, at 15 (citations to notes of testimony omitted). A review of the applicable transcript, *see* N.T., 9/24/2012, at 61-65, confirms that Appellant agreed to allow A.M. to testify about her

---

[2] As part of his argument, Appellant claims the trial court erred in permitting A.M. to testify about Appellant brandishing a firearm during the sexual abuse. Appellant's Brief at 26. Appellant did not object to this testimony at trial. "We have long held that [f]ailure to raise a contemporaneous objection to the evidence at trial waives that claim on appeal." *Commonwealth v. Thoeun Tha*, 64 A.3d 704, 713 (Pa. Super. 2013) (citations and quotation marks omitted). Therefore, that portion of this claim is waived.

- 9 -

personal observations of Appellant's violence, which was relevant to explain A.M.'s delayed reporting, an issue on which Appellant thoroughly cross-examined her. Accordingly, we find no abuse of discretion.

We next address Appellant's claim regarding testimony about the car accident. We note initially that the trial transcript is replete with references to this car accident by both the Commonwealth and Appellant, particularly during V.C.'s testimony. **See, e.g.,** N.T., 9/24/2012, at 235-36 (on direct examination of V.C.), 244-45 (on cross examination of V.C.), 251-52 (on re-direct examination of V.C.), 252-256 (on re-cross examination of V.C.), 256 (on re-direct examination of V.C.). In his Pa.R.A.P. 1925(b) statement, Appellant referenced specifically pages 234 to 235 as the location in the transcript for the objected-to testimony. In its 1925(a) opinion, the trial court reviewed those pages, and determined that Appellant failed to preserve this claim for appeal because he did not lodge an objection on the referenced pages.

On appeal, Appellant directs this Court to pages 252 to 255 of the trial transcript for the testimony he contends was admitted erroneously. **See** Appellant's Brief at 27. Within that section, Appellant did raise an objection, which the trial court overruled based on its conclusion that Appellant had opened the door to that line of inquiry. N.T., 9/24/2012, at 252-53. Because of Appellant's misleading Pa.R.A.P. 1925(b) statement, the trial court was unable to review this allegation of error, and this Court could find

this claim waived. ***See Commonwealth v. Dowling***, 778 A.2d 683, 686-87 (Pa. Super. 2001) (finding waiver when a concise statement does not permit the trial court to identify the issue raised on appeal).

However, we decline to find waiver and will address the merits of Appellant's claim. Upon review, we hold that the trial court did not abuse its discretion in permitting testimony about Appellant's involvement in the car accident. Throughout the trial, several references were made to A.M.'s potential ulterior motive of filing a false report of sexual abuse because Appellant sought a portion of the car accident settlement or wanted to prevent A.M. from receiving a lump settlement. Accordingly, Appellant's role in the car accident was relevant to disproving Appellant's allegations regarding A.M.'s ulterior motive, and we find that the trial court did not abuse its discretion in admitting testimony to provide the jury with a broader context regarding the referenced car accident.

As to Appellant's third argument, when rebuttal witness John Trotsky was asked if he knew Appellant's reputation in the community for truth-telling, he responded, "Terrible." N.T., 9/24/2012, at 277. Appellant objected, and a sidebar discussion was held. At the conclusion of the discussion, Appellant's counsel stated, "I'll let it be. I don't think it needs a curative instruction. I think we'll just go back." ***Id.*** at 280. Because Appellant was satisfied after the sidebar discussion and withdrew the objection, the trial court did not rule on the objection. Therefore, as

correctly noted by the trial court, "there is no error or relief due because [Appellant] was satisfied with the response to the question." Trial Court Opinion, 3/29/2018, at 23.

Based on the foregoing, we find no merit to Appellant's argument that any of these individual claims of error warranted a new trial. Thus, we also conclude that there was no cumulative error, and therefore Appellant is not entitled to relief. *See Commonwealth v. Jones*, 811 A.2d 994, 1007 (Pa. 2002) (citation omitted) (finding that because the trial court did not err individually, there can be no prejudicial trial court error to cumulate).

We next turn to Appellant's claim that the trial court erred in denying his post-sentence motion where he asserted that the verdict was against the weight of the evidence. Appellant's Brief at 29. "A verdict is against the weight of the evidence 'where certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" *Commonwealth v. Williams*, 176 A.3d 298, 312 (Pa. Super. 2017) (quoting *Commonwealth v. Lyons*, 833 A.2d 245, 258 (Pa. Super. 2003)). We examine challenges to the weight of the evidence according to the following standard.

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. When a trial court considers a motion for a new trial based upon a weight of the evidence claim, the trial court may award relief only when

the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. The inquiry is not the same for an appellate court. Rather, when an appellate court reviews a weight claim, the court is reviewing the exercise of discretion by the trial court, not the underlying question of whether the verdict was against the weight of the evidence. The appellate court reviews a weight claim using an abuse of discretion standard.

***Commonwealth v. Jacoby***, 170 A.3d 1065, 1080 (Pa. 2017) (citations and quotation marks omitted).

Here, Appellant argues that the trial court's alleged evidentiary errors addressed *supra* were highly prejudicial to Appellant's credibility. He contends they caused the jury to accord more than due weight to the aforementioned challenged evidence instead of focusing on A.M.'s delayed reporting, the lack of physical evidence of sexual intercourse, and A.M.'s alleged ulterior motive for filing a false report to prevent Appellant from commandeering her car accident settlement. According to Appellant, these errors resulted in a verdict based solely on the inconsistent testimony of A.M. Appellant's Brief at 31-32.

In its supplemental opinion, the trial court determined that any inconsistencies in testimony went to credibility, and the jury made credibility determinations in favor of the Commonwealth's witnesses and against Appellant's version of events. Trial Court Supplemental Opinion, 4/18/2019, at 3-4. After reviewing the record and being in a position to observe and

listen to the witnesses' testimony during trial, the trial court "was anything but shocked by the jury's verdict." *Id.* at 4.

As discussed *supra*, the trial court actually sustained several of Appellant's objections and struck that testimony from the record. Additionally, "[a]t trial, the jury was the ultimate fact-finder and the sole arbiter of the credibility of each of the witnesses." *Jacoby*, 170 A.3d at 1080. "A jury is entitled to resolve any inconsistencies in the Commonwealth's evidence in the manner that it sees fit." *Id.* Appellant cross-examined A.M. extensively regarding her delayed reporting and possible ulterior motives. The jury was permitted to credit the testimony of A.M. notwithstanding some inconsistencies. It also was permitted to credit the Commonwealth's witnesses instead of Appellant's witnesses. Assessing all of the evidence according to the governing principles cited above, we conclude that the trial court did not abuse its discretion when it denied Appellant's weight claim, and therefore Appellant is not entitled to relief.

We now turn to Appellant's sentencing claims. First, Appellant claims that the trial court abused its discretion in fashioning his sentence for statutory sexual assault because the court applied the wrong sentencing guidelines. Appellant's Brief at 19. Such a claim challenges the discretionary aspects of Appellant's sentence. *See Commonwealth v. Archer*, 722 A.2d 203, 211 (Pa. Super. 1998). Thus, we consider this claim mindful of the following.

Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

***Commonwealth v. Griffin***, 65 A.3d 932, 935 (Pa. Super. 2013) (some citations omitted).

Although Appellant has satisfied the aforementioned requirements,[3] his claim is belied by the record. Appellant's counsel requested clarification at the sentencing hearing to ensure the trial court was aware of the correct sentencing guidelines for statutory sexual assault. The trial court confirmed that it was aware of the correct standard-range sentencing guidelines, 6 to 14 months of inarceration, and applied a standard-range sentence of 14 to

---

[3] Appellant has timely filed a notice of appeal and preserved this claim in a post-sentence motion, and a claim that the sentencing guidelines were misapplied raises a substantial question. ***See Archer***, 722 A.2d at 211. While Appellant failed to include a Pa.R.A.P. 2119(f) statement in his brief, because the Commonwealth does not object, it is not a fatal defect. ***Commonwealth v. Stewart***, 867 A.2d 589 (Pa. Super. 2005) (declining to find waiver of sentencing claim due to lack of Pa.R.A.P. 2119(f) statement where Commonwealth did not object). Accordingly, we address Appellant's discretionary-aspects-of-sentencing claim.

28 months of incarceration. N.T., 4/11/2014, at 14, 79-80. Accordingly, we find no abuse of discretion.

Appellant next claims that the mandatory minimum sentences imposed at his IDSI convictions must be vacated because they are unconstitutional pursuant to **Commonwealth v. Wolfe**, 140 A.3d 651 (Pa. 2016). Appellant's Brief at 17. In **Wolfe**, our Supreme Court reviewed 42 Pa.C.S. § 9718, which provides for a mandatory minimum sentence of 10 years of incarceration for individuals convicted of IDSI when the sentencing court determines by a preponderance of the evidence that the victim is less than 16 years old. Based on **Alleyne v. United States**, 570 U.S. 99 (2013), which held that "any fact that, by law, increases the penalty for a crime must be treated as an element of the offense, submitted to a jury rather than a judge, and found beyond a reasonable doubt[,]" our Supreme Court found section 9718 unconstitutional. **Wolfe**, 140 A.3d at 653 (citing **Alleyne**, 570 U.S. at 115-16).

Appellant's claim implicates the legality of his sentence. "Issues relating to the legality of a sentence are questions of law[.] ... Our standard of review over such questions is *de novo* and our scope of review is plenary." **Commonwealth v. Cardwell**, 105 A.3d 748, 750 (Pa. Super. 2014) (citations and quotations omitted).

Appellant was convicted of three counts of IDSI at 18 Pa.C.S. § 3123(a)(7). To be convicted under this subsection, the factfinder must

have found, beyond a reasonable doubt, that Appellant engaged in deviate sexual intercourse with A.M. when A.M. was less than 16 years of age, Appellant was four or more years older than A.M., and A.M. and Appellant were not married to each other. *Id.* In defining the elements of this crime, the trial court instructed the jury that it must find that A.M. was less than 16 years of age in order to find Appellant guilty of IDSI. N.T., 9/24/2012, at 360-62. Following deliberations, the jury found Appellant guilty of three counts of IDSI "with a person less than 16 years of age[.]" *Id.* at 376-77. At sentencing, the trial court applied the version of section 9718 that was applicable at the time Appellant committed IDSI, which mandated that a person convicted of IDSI when the victim is less than 16 years old be sentenced to a minimum term of imprisonment of five years. 42 Pa.C.S. § 9718(a)(1) (effective 11/30/2004 to 12/31/2006).[4]

Upon review, we find no error. Appellant was convicted of IDSI pursuant to 18 Pa.C.S. § 3123(a)(7), which requires proof that the victim was less than 16 years of age. Therefore, because Appellant received a mandatory minimum sentence based solely on the subsection of IDSI for which he was convicted, no aggravating fact needed to be proven to subject Appellant to the mandatory minimum sentence. Moreover, because the version of section 9718 under which Appellant was sentenced did not

---

[4] This prior version did not specify how the fact of the victim's age must be proven.

- 17 -

delegate the fact-finding of age to the trial court by a preponderance of the evidence, and because the jury determined beyond a reasonable doubt that the aggravating factor of age existed, Appellant's sentence does not violate the principles set forth in **Alleyne**. Accordingly, we find that Appellant's mandatory-minimum sentence is legal.

Finally, Appellant claims that his designation as an SVP is unconstitutional under **Commonwealth v. Muniz**, 164 A.3d 1189 (Pa. 2017),[5] and **Commonwealth v. Butler**, 173 A.3d 1212 (Pa. Super. 2017),[6] *appeal granted*, 190 A.3d 581 (Pa. 2018). Appellant's Brief at 18.

The Pennsylvania General Assembly passed SORNA on December 20, 2011, with an effective date of December 20, 2012. A recent *en banc* panel of this Court vacated a defendant's SVP designation imposed after SORNA's effective date for crimes committed before SORNA's effective date because the trial court "designated [the defendant] as an SVP without making the required factual findings beyond a reasonable doubt." **Commonwealth v**

---

[5] In **Muniz**, our Supreme Court held that certain registration provisions of Pennsylvania's Sex Offender Registration and Notification Act (SORNA) are punitive and retroactive application of those provisions violates the *ex post facto* clauses of the Pennsylvania and United States constitutions.

[6] In **Butler**, this Court, applying **Muniz** and **Alleyne**, held that SORNA's SVP procedure violates the federal and Pennsylvania constitutions "because it increases the criminal penalty to which [a defendant] is exposed without the chosen fact-finder making the necessary factual findings beyond a reasonable doubt." 173 A.3d at 1218.

**Lippincott**, \_\_\_ A.3d. \_\_\_, 2019 WL 1612677 at *9 (Pa. Super. 2019) (*en banc*).[7]

Here, Appellant committed the underlying offenses before both SORNA's enactment date and effective date. Appellant was convicted on September 26, 2012, between SORNA's enactment date and effective date. The Sexual Offender Assessment Board (SOAB) prepared a report for Appellant's pending SVP hearing on December 7, 2012, before SORNA's effective date. However, due to delays from a sexual offender assessment and motion for extraordinary relief, Appellant's SVP hearing was not held until April 11, 2014, after SORNA's effective date.

It is unclear from the record whether the trial court conducted the SVP hearing pursuant to Megan's Law, which was applicable at the time Appellant committed his offenses, or SORNA, which became effective prior to the SVP hearing. Of note, during the SVP hearing, the Commonwealth indicated to the trial court that it need only find the statutory SVP criteria by clear and convincing evidence. N.T., 4/11/2014, at 54. Additionally, at the conclusion

---

[7] The author of this memorandum disagrees with **Lippincott**'s holding that "application of SORNA to sex offenders for offenses committed before its **effective** date violates the *ex post facto* clauses of the United States and Pennsylvania constitutions." **Lippincott, supra** at *6 (emphasis added). In **Lippincott**, some of Lippincott's offenses occurred between SORNA's enactment date and SORNA's effective date. This author avers that once SORNA was enacted, Lippincott received fair notice of the potential penalties he could face under SORNA. Nonetheless, this distinction is not relevant to this disposition because Appellant's offenses all occurred before both SORNA's enactment date and effective date.

of the hearing, the trial court found that Appellant met the criteria to be designated an SVP and ordered Appellant "to comply with Megan's Law and Adam Walsh SORNA requirements[.]" *Id.* at 81. As such, it appears that the trial court employed, at least in part, SORNA's unconstitutional statutory mechanism for designating Appellant an SVP. Because the trial court designated Appellant as an SVP without making the required factual findings beyond a reasonable doubt, we are compelled to vacate Appellant's SVP status in light of *Lippincott*.[8]

Portion of Appellant's sentencing order designating him as an SVP vacated. Judgment of sentence affirmed in all other respects.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary
Date: 6/28/2019

---

[8] We note that pursuant to Appellant's IDSI conviction, he is still subject to lifetime registration. Some other penalties under SORNA are more severe than under Megan's Law.